UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **PROJECT ON GOVERNMENT OVERSIGHT, INC.**<br>1100 13th Street, NW<br>Suite 800<br>Washington, D.C. 20005,<br><br>    Plaintiff,<br><br>v.<br><br>**NATIONAL ARCHIVES AND RECORDS ADMINISTRATION**<br>8601 Adelphi Road<br>College Park, MD 20704<br><br>    and<br><br>**COLLEEN SHOGAN** in her official capacity as Archivist of the United States<br>700 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20408,<br><br>    Defendants. | Civil Action No. |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. Plaintiff Project On Government Oversight, Inc. ("POGO") brings this action for declaratory and injunctive relief against Defendants National Archives and Records Administration ("NARA") and Colleen Shogan in her official capacity as Archivist of the United States ("Archivist") pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.*, the Federal Records Act ("FRA"), 44 U.S.C. §§ 3301, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*

2. Plaintiff challenges Defendants' violations of their nondiscretionary duties under the FRA to initiate an action through the Attorney General to recover federal records that U.S.

Department of Homeland Security ("DHS") Inspector General ("IG") Joseph V. Cuffari unlawfully destroyed or alienated from government custody and for other legal redress. The deleted records include text messages IG Cuffari sent or received on his government-issued phone that likely were responsive to a Freedom of Information Act ("FOIA") request POGO filed with the U.S. Department of Homeland Security.

**JURISDICTION AND VENUE**

3. Because this action arises under the APA, 5 U.S.C. §§ 701, *et seq.*, the FRA, 44 U.S.C. §§ 3301, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

4. Venue lies in this district pursuant to 28 U.S.C. § 1391(e).

**PARTIES**

5. Plaintiff POGO is a nonpartisan independent organization based in Washington, D.C. and organized under section 501(c)(3) of the Internal Revenue Code. Founded in 1981, POGO champions reforms to achieve a more effective, ethical, and accountable federal government that safeguards constitutional principles. POGO's investigators and journalists take leads and information from insiders and verify the information through investigations using the FOIA, interviews, and other fact-finding strategies. POGO's investigative work has been recognized by Members of Congress, executive branch officials, and professional journalism organizations. For instance, in 2015, POGO won the Robert D.G. Lewis Watchdog Award, the Society of Professional Journalists Washington, D.C. Professional Chapter's highest journalistic award, for reporting on the Department of Justice's opaque system for handling allegations of attorney misconduct within its ranks. That reporting was based on records obtained through the FOIA. In 2018, POGO won an award from the Society for Advancing Business Editing &

2

Writing for its investigative series scrutinizing the government's oversight of offshore drilling. POGO extensively used records obtained under the FOIA for this investigation as well.

6. As a frequent FOIA requester POGO has a strong operational interest in government compliance with the recordkeeping obligations that the FRA imposes on all federal agencies. The unlawful destruction or alienation of federal records POGO seeks through the FOIA impedes POGO's ability to fulfill its mission and impairs the informational rights that the FOIA affords POGO.

7. POGO's pending FOIA requests include a request POGO made of the DHS Office of Inspector General ("OIG") for documents related to efforts by IG Cuffari to change and suppress findings from a report his office drafted on sexual misconduct by DHS law enforcement personnel, his and his leadership team's response to congressional and press inquiries about this report and other matters on which POGO has reported, and IG Cuffari's government travel practices. Because IG Cuffari deleted text messages that likely were responsive to POGO's FOIA request POGO has been unable to obtain all responsive documents, hindering its investigation into the actions of IG Cuffari and others in his office.

8. Defendant NARA is an agency within the meaning of the APA, 5 U.S.C. § 551(l), and the FRA, 44 U.S.C. § 2901 (14). The FRA charges NARA, among other things, with the responsibility to assist federal agencies in maintaining adequate and proper documentation of the policies and transactions of the federal government.

9. Defendant Colleen Shogan is the Archivist of the United States and is sued in her official capacity only. The FRA imposes on her, among other duties, the obligation to initiate action through the Attorney General to recover unlawfully destroyed or alienated federal records.

## LEGAL BACKGROUND

10. The FRA is a collection of statutes that governs the creation, management, and disposal of federal or agency records. 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, and 3301-24. Congress enacted the FRA to ensure "[a]ccurate and complete documentation of the policies and transactions of the Federal Government." 41 C.F.R. § 102-193.10(a).

11. Toward that end, the FRA requires federal agencies to establish: (1) a program to make and preserve agency records; (2) effective controls over the creation, maintenance, and use of records; and (3) safeguards against the removal or loss of records. 44 U.S.C. §§ 3101, 3102, and 3105.

12. The FRA specifically mandates that "[t]he head of each Federal agency *shall make and preserve* records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency[.]" 44 U.S.C. § 3101 (emphasis added). The FRA defines the term "records" to include "all books, papers . . . or other documentary materials, regardless of physical form or characteristics . . . made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency . . . as evidence of the organization, functions, policies, decisions, procedures, operations or other activities of the Government or because of the informational value of data in them." 44 U.S.C. § 3301.

13. The FRA provides the exclusive procedure by which all federal records may be disposed of or destroyed. *See* 44 U.S.C. § 3314. Under its provisions, federal records may be disposed of or destroyed only with the authorization of the Archivist either through General Records Schedules or NARA-approved agency-specific disposition schedules. *See* 44 U.S.C. §§ 3303, 3303a(a) and (d).

14. The FRA generally requires that federal records, including those generated in personal electronic messaging accounts, be preserved in a government recordkeeping system. Consistent with this obligation the FRA prohibits agency officials from "create[ing] or send[ing] a record using a non-official electronic messaging account unless such officer or employee—(1) copies an official electronic messaging account of the officer or employee in the original creation or transmission of the records; or (2) forwards a complete copy of the record to an official electronic messaging account of the officer or employee not later than 20 days after the original creation or transmission of the record." 44 U.S.C. § 2911(a).

15. To prevent the unlawful destruction or removal of records the FRA creates a "system of administrative enforcement." *Armstrong v. Bush*, 924 F.2d 282, 284 (D.C. Cir. 1991). This system imposes obligations on both agency heads and the Archivist.

16. With respect to agency heads, the FRA provides that if they become aware of "any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency" they "shall" "notify the Archivist" and "with the assistance of the Archivist . . . initiate action through the Attorney General for the recovery" of such records. 44 U.S.C. § 3106(a); *see also* 36 C.F.R. 1230.14 (implementing NARA regulation detailing how agencies "must report promptly any unlawful or accidental removal, defacing, alteration, or destruction of records in the custody of that agency to NARA").

17. With respect to the Archivist, if an agency head fails to take these steps "within a reasonable period of time after being notified of any such unlawful action . . . or is participating in any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made." 44 U.S.C. § 3106(b).

18. Separately the FRA imposes on the Archivist the obligation to notify an agency head "of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of the agency that shall come to the Archivist's attention[.]" 44 U.S.C. § 2905(a). After providing this notification the Archivist must "assist the head of the agency in initiating action through the Attorney General for the recovery of records unlawfully removed and for other redress provided by law. *Id.* If the agency head fails to initiate such an action "within a reasonable period of time" after being notified of "any such unlawful action" the Archivist "shall request the Attorney General to initiate such an action[.]" *Id.*

19. The FRA's "mandatory enforcement provisions" reflect Congress' judgment that "marshalling the law enforcement authority of the United States [is] a key weapon in assuring record preservation and recovery." *Judicial Watch v. Kerry*, 844 F.3d 952, 956 (D.C. Cir. 2016).

20. Implementing NARA regulations define "[u]nlawful or accidental destruction" as "disposal of an unscheduled or permanent record; disposal prior to the end of the NARA-approved retention period of a temporary record . . . and disposal of a record subject to a FOIA request, litigation hold, or any other hold requirement to retain the records." 36 C.F.R. § 1230.3(b). As NARA's regulations note, "[t]he penalties for the unlawful or accidental removal, defacing alteration, or destruction of Federal records or the attempt to do so, include a fine, imprisonment, or both." *Id.* at § 1230.12 (citing 18 U.S.C. §§ 641, 2071).

**FACTUAL BACKGROUND**

21. On July 5, 2022, POGO filed a FOIA request with DHS's Office of Inspector General following public reporting in April 2022 that IG Cuffari and top aides, after seeing a

6

draft report prepared by DHS's Office of Inspector General that set forth detailed evidence of widespread sexual harassment and misconduct committed by DHS law enforcement personnel, continued to withhold the report from publication for more than a year (and continue to do so, at this point for more than two and a half years).

22. A May 10, 2022 letter to IG Cuffari from the Chairs of the House Committee on Oversight and Reform and the House Committee on Homeland Security requested that he produce "*[a]ll communications* regarding revisions, modifications, and decisions regarding when or whether to issue the DHS OIG report on sexual misconduct and harassment" and "*[a]ll communications* regarding revisions or modifications to the OIG-21-09 report involving DHS OIG personnel." (emphasis added). *See* https://oversightdemocrats.house.gov/sites/democrats. oversight.house.gov/files/2022-05-10.CBM%20Thompson%20to%20Cuffari-DHS%20IG%20re %20Reports.pdf. The letter also described IG Cuffari's actions as raising "concerns about [his] ability to independently and effectively perform [his] duties as Inspector General." *Id.* POGO's request sought records related to IG Cuffari's reported actions.

23. On August 15, 2022, POGO filed a lawsuit against DHS based on the agency's failure to respond in any way to POGO's FOIA request. *See POGO v. DHS*, Civil Action No. 22-2424 (AGJ) (D.D.C. 2022). Once in litigation, DHS OIG began producing documents responsive to POGO's request. With respect to that part of POGO'S FOIA request seeking text messages from IG Cuffari and members of his leadership team, DHS provided text messages from only Principal Deputy Inspector General Glenn Sklar, and advised POGO it had no responsive documents from IG Cuffari himself.

24. On August 16, 2022, the Chairs of the House Committee on Oversight and Reform and the House Committee on Homeland Security wrote to IG Cuffari and stated that his

"response failed to comply with the requests in our May 10, 2022, letter. Among other things, you failed to produce any drafts, working papers, *or communications* regarding the censored or delayed reports." (emphasis added). *See* https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/files/2022-08-16.CBM%20BGT%20to%20Cuffari-DHS%20IG%20re%20IG%20Reports.pdf.

25. On June 6, 2023, IG Cuffari testified before the Subcommittee on National Security, the Border, and Foreign Affairs of the House Committee on Oversight and Accountability. In response to questioning IG Cuffari admitted that although he sends text messages on his government phone, which he uses "to conduct business," his "normal practice" is to delete them. IG Cuffari also admitted that the messages he deleted were "business," not personal, he also claimed without explanation that he did not consider them to be federal records. According to IG Cuffari, he alone made the decision that none of those messages were federal records.

26. While this was the first public revelation of IG Cuffari's mass deletion of his text messages, OIG staff learned of his actions previously when searching for documents responsive to POGO's July 5, 2022 FOIA request. A December 22, 2022 email ("December 22 email") documents that while searching for records responsive to POGO's FOIA request a records custodian, subsequently identified as IG Cuffari, advised that text messages were deleted in their entirety from his government-issued iPhone and that DHS OIG policy for capturing such messages was not followed.

27. The December 22, 2022 email went on to note that a comparison of text messages from other custodians of records responsive to POGO's request indicated the deleted text messages "likely contained federal records." As a result, the email states, if

confirmed the deletion of these text messages "may have violated the Federal Records Act and DHS policy for retention of electronic messages."

28. On January 3, 2022, DHS submitted internally a three-page Plan of Action ("Plan of Action") with the stated goal of (1) determining whether the IG's deleted text messages were Federal records, and (2) implementing procedures to ensure the IG's Federal records were properly preserved. The Plan of Action sought to assign to the OIG Records and Information Management ("RIM") Officer and the Strategy, Records and Coordination ("SRC") Director the task of conducting a review to determine if IG Cuffari had inappropriately destroyed Federal records.

29. The Background section of the Plan notes, among other things, that not only did IG Cuffari admit that DHS OIG policy was not followed for capturing his text messages, but an examination of text messages sent from other records custodians to the IG's OIG iPhone indicated that IG Cuffari's phone "likely contained Federal records." The Plan goes on to state that under applicable regulations, Federal agencies must report promptly to NARA any unlawful or accidental removal, defacing, alteration, or destruction of records in the custody of the agency.

30. The Plan of Action also lays out who was notified about the possible inappropriate destruction of Federal records by IG Cuffari, and when. Those names, however, are deleted from the publicly available copy of the Plan.

31. To answer the question of whether IG Cuffari unlawfully deleted his text messages the Plan of Action proposed nine steps: (1) identify records review and reporting guidance, develop a review plan, and submit it to the deputy inspector general for the Office of Management ("DIGOM"); (2) DIGOM should then discuss the issue with the counsel to

the IG; (3) the OIG RIM was then to obtain statements and evidence; (4) the SRC director and RIM officer were then to work with an attorney from the Office of Counsel ("OC") on legal issues and reporting requirements; (5) the RIM officer was then to determine if the text messages sent to the IG by other records custodians were Federal records and who was responsible for maintaining them; (6) the OIG RIM officer and SRC director were then to discuss the matter with IG Cuffari to confirm he deleted his messages and did not ask others to preserve them; (7) the RIM officer and SRC director were to keep others informed of their progress at least weekly; (8) the OIG RIM officer was then to determine the scope of the loss and address other reporting requirements; and (9) if Federal records were destroyed without proper disposition authority OM was to work with OC to determine if the matter should be reported to NARA. The Plan concludes with the option that another OIG office could conduct the review.

32. On information and belief, the Plan of Action was never implemented and no one at DHS advised NARA about IG Cuffari's deletion of Federal records.

33. On June 12, 2023, following IG Cuffari's congressional testimony, the Ranking Member of the House Subcommittee on Cybersecurity, Information Technology, and Government Innovation Workforce and the Ranking Member of the House Subcommittee on Government Operations and the Federal Workforce sent a letter to the Archivist advising her of IG Cuffari's congressional testimony in which he admitted his normal practice was to delete text messages on an ongoing basis and his confirmation that he was unaware if deleted messages were backed up for record keeping purposes.

34. The letter further noted that while NARA lists cases of unauthorized records disposal on its website that list did not include any cases of deleted records at the DHS Office

of Inspector General. The letter also referenced a complaint made to the NARA Office of Inspector General on March 13, 2023, regarding IG Cuffari's deletion of federal records.

35. The congressional letter concluded with the request that NARA undertake a review to determine what, if any, federal records were destroyed by IG Cuffari and whether any other senior officials at the DHS OIG also destroyed federal records. The letter further noted that NARA should also consult with the Department of Justice, as appropriate, if evidence confirms that IG Cuffari or other senior officials failed to notify NARA about their unlawful destruction of federal records, in violation of the law.

36. On June 15, 2023, NARA sent a letter to DHS's chief information officer raising the issue of the potential loss of electronic messages, including text messages and Signal messages, within DHS OIG. NARA requested that DHS provide it a report, pursuant to 36 C.F.R. § 1230.16(b), documenting IG Cuffari's practices with respect to the management of electronic messages, and in particular all messages that meet the definition of a federal record. NARA's letter noted that DHS's review should include, but not be limited to, how DHS ensures that text messages that are federal records are properly retained; any training DHS provides to staff members, including senior officials, to ensure that text messages are captured as federal records; and any policies and procedures that are issued on how text messages are identified and preserved if determined to be federal records.

37. By letter dated July 24, 2023, the Ranking Member of the House Committee on Homeland Security and the Ranking Member of the Subcommittee on Oversight, Investigations, and Accountability forwarded to the Archivist additional evidence concerning IG Cuffari's willful destruction of Federal records and failure to report the destruction to NARA. That evidence consisted of the December 22, 2022 email and the Plan of Action.

38. The July 24, 2023 congressional letter requested that NARA consult with the Department of Justice if the evidence confirms IG Cuffari's failure to notify NARA about his unlawful destruction of Federal records.

39. By letter dated July 25, 2023, the Archivist responded to the July 24, 2023 congressional letter. The Archivist advised that she had provided the two documents included with the July 24, 2023 congressional letter to NARA's Chief Records Officer to be considered as part of that office's ongoing review of the matter.

40. Separately by letter dated June 27, 2023 to the Archivist POGO requested that NARA ask the Department of Justice to initiate an enforcement action to recover text messages that may have been unlawfully deleted by IG Cuffari, in violation of the FRA and to investigate the circumstances behind their deletion as well as the failure of DHS to report the matter to NARA. In support POGO relied in part on IG Cuffari's congressional testimony in which he admitted he deleted text messages from his government-issued phone.

41. POGO's letter noted that IG Cuffari's actions conflict directly with a DHS policy dating back to 2014 that places on all DHS employees the obligation to ensure they preserve any texts on their government phones that may be federal records. Two months after staff discovered Cuffari had deleted texts from his phone, the DHS IG's Office of the Chief Information Officer warned all staff in an email, "Do not use SMS/MMS electronic messaging to conduct federal government business/activities." The email further states that if such electronic messages are inadvertently created or received they "must be captured." Notwithstanding this guidance, IG Cuffari admitted to Congress that he continues to delete text messages on an ongoing basis.

42. POGO's letter also pointed out that the fact that IG Cuffari willfully deleted his own texts from his government phone alone is sufficient basis for the Archivist to ask the Department of Justice to examine whether any criminal destruction of federal records occurred under 18 U.S.C. § 2071. Moreover, IG Cuffari's unilateral actions differ significantly from other cases where agency records were destroyed due to accidents or systematic weaknesses—situations that do not suggest any intentional criminal effort. By contrast, IG Cuffari's records were not deleted as part of a device reset carried out by Information Technology staff, nor were they physical records lost in a flood or fire.

43. Further, as POGO's letter to NARA explained, while IG Cuffari has claimed that the texts he deleted are not federal records, DHS must preserve a substantial range of records, including correspondence, as federal records either permanently or temporarily. That range is especially broad when it comes the records of IG Cuffari. For example, under DHS records schedules "correspondence signed by the Inspector General" must be permanently retained as federal records.

44. POGO's letter also explained why referral to the Department of Justice is particularly warranted given that IG Cuffari's conduct is part of a larger pattern of delay and obfuscation by the agency's top watchdog, charged with preventing and detecting fraud and abuse in DHS programs and operations. Whenever top agency officials appear to have concealed allegedly unlawful actions, the purpose and provisions of the FRA suggest Congress intended there to be an independent investigation.

45. POGO further explained that although an Inspector General normally is not considered to be an agency head, an IG is treated as one in numerous respects and has greater independence than the head of a typical agency component. Here, POGO noted,

because IG Cuffari participated in the deletion of records while functionally acting as an agency head and failed to report his deletions to NARA in a reasonable amount of time the Archivist should request the assistance of the Attorney General and report that request to Congress.

46. POGO's letter also lays out the reasons why NARA's request of June 15, 2023, seeking an accounting from DHS is no substitute for a Department of Justice inquiry, with the full panoply of investigative resources that the Attorney General possesses. Critically, NARA's request places DHS in the problematic position of investigating its own inspector general, whose independence is protected by the Inspector General Act. A Department of Justice inquiry of the DHS IG does not create such a problem.

47. By letter dated August 4, 2023, NARA advised POGO that NARA interpreted the enforcement provisions of the FRA to mean that the Department of Justice generally has no role to play in helping agencies recover records that have been improperly destroyed or deleted. According to NARA, the FRA distinguishes between cases of unauthorized destruction and unauthorized removal of federal records, and only for the latter cases contemplates referral to the Department of Justice. NARA indicated that therefore it would instead pursue its own investigative process.

## **CLAIMS FOR RELIEF**

**(Refusal of Defendants NARA and the Archivist to Request that the Department of Justice Initiate an Action to Redress IG Cuffari's Deletion of Federal Records in Violation of the Administrative Procedure Act, 5 U.S.C. §§ 706(1), 706(2)(A), and the Federal Records Act, 44 U.S.C. §§ 2905, 3106))**

48. POGO repeats and re-alleges paragraphs 1 through 47.

49. The FRA imposes on NARA and the Archivist a non-discretionary duty to notify the head of an agency of any actual destruction of records in the custody of the agency that comes to the Archivist's attention and assist the head of an agency in initiating an action through the Attorney General for the recovery of those records and for other redress provided by law.

50. The FRA also dictates that if the head of an agency fails to initiate an action for recovery or other redress within a reasonable period of time after notification from NARA the Archivist must request that the Attorney General initiate an action for the recovery of destroyed records and for other redress provided by law.

51. Implementing NARA regulations specifically define an **unlawful record destruction as including the disposal of a record subject to a FOIA request**,

52. DHS IG Joseph V. Cuffari unlawfully deleted text messages that he admitted he sent while conducting agency business in violation of the FRA, NARA regulations, and DHS records retention policies. The deleted text messages likely were federal records within DHS's legal ownership, custody, or control and were not destroyed pursuant to any NARA-approved disposition schedule. The deletions were also unlawful because the deleted records likely were responsive to a FOIA request filed by Plaintiff POGO.

53. NARA has been aware of the unlawful deletions at least since March 13, 2023, when NARA's **Office of Inspector General received a complaint on that day regarding IG Cuffari's deletion of federal records.**

53. The deleted records have not been restored, recovered, retrieved, salvaged, or reconstructed. In fact, IG Cuffari affirmatively prevented the implementation of a plan to address his unlawful deletion of his text messages and to notify NARA about the unlawful deletions.

54. Despite knowledge of IG Cuffari's actions, NARA and the Archivist have affirmatively refused to initiate an action through the Attorney General for the recovery of his destroyed records and for other redress provided by law.

55. By refusing after the passage of a reasonable period of time to initiate an action through the Attorney General for the recovery of IG Cuffari's destroyed records and for other redress provided by law, NARA and the Archivist have violated their non-discretionary duty under 44 U.S.C. § 2905.

56. The failure of NARA and the Archivist to initiate an action through the Attorney General for the recovery of IG Cuffari's destroyed records and for other redress provided by law is "agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A).

57. POGO is therefore entitled to relief in the form of a declaratory judgment that NARA and the Archivist are in violation of their statutory obligations under 44 U.S.C. § 2905 and an injunction compelling them to request that the Attorney General initiate an action for the recovery of the destroyed records and for other redress provided by law.

## PRAYER FOR RELIEF

WHEREFORE POGO respectfully requests that this Court:

(1) Declare Defendants NARA and the Archivist in violation of the APA, FRA, and NARA regulations;

(2) Declare Defendants NARA and the Archivist in violation of their non-discretionary duties under the FRA to requests that the Attorney General initiate an action for the recovery of IG Cuffari's destroyed records and for other redress provided by law;

(3) Order Defendants immediately to request that the Attorney General initiate an action for the recovery of IG Cuffari's destroyed records and for other redress provided by law;

(4) Award POGO costs and reasonable attorneys' fees in this action; and

(5) Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

 /s/ Anne L. Weismann 
Anne L. Weismann
(D.C. Bar No. 298190)
5335 Wisconsin Avenue, N.W., Suite 640
Washington, D.C. 20015
Phone: 301-717-6610
Dated: September 1, 2023                   Weismann.anne@gmail.com