UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PROJECT ON GOVERNMENT OVERSIGHT, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> NATIONAL ARCHIVES AND RECORDS ADMINISTRATION *et al.*, <br><br> *Defendants*. | Case No. 23-cv-2564-DLF |

## DEFENDANTS' MOTION TO DISMISS

Defendants hereby move for dismissal of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of this motion, Defendants submit the accompanying Memorandum of Points and Authorities and proposed Order.

Dated: November 27, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

*/s/ Cormac A. Early*
CORMAC A. EARLY
D.C. Bar. No. 1033835
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 616-7420

cormac.a.early@usdoj.gov

*Counsel for Defendants*

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PROJECT ON GOVERNMENT OVERSIGHT, INC, <br><br> Plaintiff, <br> v. <br><br> NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, *et al.* <br><br> Defendants. | Case No. 23-cv-2564-DLF |

# DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

I.  STATUTORY BACKGROUND ........................................................................................ 1

II. PROCEDURAL BACKGROUND ..................................................................................... 3

STANDARD OF REVIEW ................................................................................................... 3

ARGUMENT ........................................................................................................................ 4

I.  THE FRA'S ENFORCEMENT DUTY APPLIES ONLY WHEN RECORDS HAVE BEEN REMOVED FROM AGENCY CUSTODY ............................................................ 4

II. DECLINING TO SEEK ENFORCEMENT ACTION FROM THE ATTORNEY GENERAL WAS NOT ARBITRARY OR CAPRICIOUS ............................................... 11

CONCLUSION ................................................................................................................... 12

**TABLE OF AUTHORITIES**

**Cases**

*ACLU Found. of Fl. v. U.S. Immigration & Custom Enforcement*,
    2023 WL 6461053 (D.D.C. Aug. 31, 2023) .................................................................. 9, 10

*Am. Anti-Vivisection Soc'y v. U.S. Dep't of Ag.*,
    946 F.3d 615 (D.C. Cir. 2020) ............................................................................................ 12

*Armstrong v. Bush*,
    924 F.2d 282 (D.C. Cir. 1991) ........................................................................................ 2, 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................. 3

*Bennett v. Spear*,
    520 U.S. 154 (1997) ............................................................................................................ 12

\* *Citizens for Resp. & Ethics in Washington v. U.S. SEC*,
    916 F. Supp. 2d 141 (D.D.C. 2013) ........................................................................ 4, 7, 8, 11

*Crowell v. Benson*,
    285 U.S. 22 (1932) ................................................................................................................ 8

*Dalton v. Specter*,
    511 U.S. 462 (1994) ............................................................................................................ 12

*Erlenbaugh v. United States*,
    409 U.S. 239 (1972) ............................................................................................................ 10

*Franklin v. Mass.*,
    505 U.S. 788 (1992) ............................................................................................................ 12

*Halverson v. Slater*,
    129 F.3d 180 (D.C. Cir. 1997) ............................................................................................. 1

*Jennings v. Rodriguez*,

   138 S.Ct. 830 (2018) ............................................................................................................... 8

*Judicial Watch, Inc. v. Kerry*,

   844 F.3d 952 (D.C. Cir. 2016) ................................................................................................ 8

*Kissinger v. Reporters Committee For Freedom of the Press*,

   445 U.S. 136 (1980) ............................................................................................................... 1

*Lujan v. Nat'l Wildlife Federation*,

   497 U.S. 871 (1990) ............................................................................................................. 12

*Mary Ferrell Foundation, Inc. v. Biden*,

   2023 WL 4551066 (N.D. Cal. July 14, 2023) ..................................................................... 8, 9

*Motion Picture Ass'n of Am., Inc. v. FCC*,

   309 F.3d 796 (D.C. Cir. 2002) .............................................................................................. 10

*Norton v. S. Utah Wilderness Alliance*,

   542 U.S. 55 (2004) ................................................................................................................. 4

*Public Citizen v. Carlin*,

   184 F.3d 900 (D.C. Cir. 1999) ............................................................................................ 1, 2

*Russello v. United States*,

   464 U.S. 16 (1983) ................................................................................................................. 6

*S.E.C. v. F.L.R.A.*,

   568 F.3d 990 (D.C. Cir. 2009) ................................................................................................ 8

*Sissel v. U.S. Dep't of Health & Human Servs.*,

   760 F.3d 1 (D.C. Cir. 2014) ................................................................................................... 3

*TRW Inc. v. Andrews*,

   534 U.S. 19 (2001) ............................................................................................................... 6

*United States v. Red Lake Band of Chippewa Indians*,

   827 F.2d 380 (8th Cir. 1987) ............................................................................................... 7

*Zukerman v. USPS*,

   961 F.3d 431 (D.C. Cir. 2020) ............................................................................................. 2

**<u>Statutes</u>**

5 U.S.C. § 704 ............................................................................................................................. 12

5 U.S.C. § 706 ......................................................................................................................... 4, 11

18 U.S.C. § 641 ........................................................................................................................... 10

28 U.S.C. § 516 ......................................................................................................................... 7, 8

28 U.S.C. § 519 ............................................................................................................................. 8

44 U.S.C. § 2905 ........................................................................................................... 2, 3, 5, 6, 11

44 U.S.C. § 3101 ........................................................................................................................... 2

44 U.S.C. § 3105 ....................................................................................................................... 2, 7

44 U.S.C. § 3106 ............................................................................................................. 3, 5, 6, 11

44 U.S.C. § 3301 ........................................................................................................................... 2

44 U.S.C. § 3303 ........................................................................................................................... 2

**<u>Regulations</u>**

36 C.F.R. § 1220.14 ...................................................................................................................... 2

36 C.F.R. § 1230.3 ........................................................................................................................ 7

**INTRODUCTION**

In testimony before the Subcommittee on National Security, the Border, and Foreign Affairs of the House Committee on Oversight and Accountability on June 6, 2023, Joseph A. Cuffari, Inspector General of the U.S. Department of Homeland Security, stated that he routinely deleted text messages from his agency-issued phone as he did not consider them federal records. *See* Compl. ¶ 25, ECF 1 at 8.[1] He also stated that he does conduct business using his agency-issued phone. *Id.*

The Project on Government Oversight ("POGO") brings this case under the Federal Records Act ("FRA") to seek to compel the National Archives and Records Administration and the Archivist of the United States to seek an enforcement action through the Attorney General to recover Cuffari's deleted text messages. The duty that POGO seeks to enforce, however, only applies to records that were unlawfully removed from agency custody, as distinct from records that were unlawfully destroyed, as POGO alleges is the case with Cuffari's text messages. Accordingly, this case should be dismissed for failure to state a claim.

**I.   STATUTORY BACKGROUND**

The FRA is "a collection of statutes governing the creation, management, and disposal of records by federal agencies." *Public Citizen v. Carlin*, 184 F.3d 900, 902 (D.C. Cir. 1999), *cert denied* 529 U.S. 1003 (2000); *see* 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-14. The FRA "authorizes the head of each Federal agency to establish a records management program and to define the extent to which documents are appropriate for preservation as agency records." *Kissinger v. Reporters Committee For Freedom of the Press*, 445 U.S. 136, 147 (1980). Agency

---

[1] Cuffari's full testimony is available at https://oversight.house.gov/hearing/help-wanted-law-enforcement-staffing-challenges-at-the-border/ (last accessed November 27, 2023). The relevant portion begins at 1:38:09.

heads are directed by the FRA to "establish and maintain an active, continuing program for the economical and efficient management of the records of the agency," and "shall establish safeguards against the removal or loss of records [they] determine[] to be necessary and required by regulations of the Archivist." 44 U.S.C. § 3105. Additionally, the Act "provides the exclusive means for record disposal."[2] *Id.*; *see* 44 U.S.C. § 3303(a).

Records covered by the FRA include

all recorded information, regardless of physical form or characteristics, made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of the data in them.

44 U.S.C. § 3301(1)(A). By regulation, records under the FRA are deemed either "permanent" or "temporary." Permanent records include any federal record that "has been determined by [the National Archives Record Administration ("NARA")] to have sufficient value to warrant its preservation in the National Archives of the United States." 36 C.F.R. § 1220.14 (2006). Temporary records are any records "which have been determined by the Archivist of the United States to have insufficient value . . . to warrant its preservation by [NARA]." *Id.*

The FRA also establishes an administrative enforcement scheme, consisting of two complementary mechanisms for protecting records. *Armstrong v. Bush*, 924 F.2d 282, 294 (D.C. Cir. 1991). Under 44 U.S.C. § 2905, if the Archivist learns that federal records are being mishandled in certain material ways, then he or she may notify the relevant agency head, assist the agency head in initiating an action through the Attorney General (or initiate the action herself if the agency head does not act "within a reasonable period of time") "for the recovery of records

---

[2] The Records Disposal Act, 44 U.S.C. § 3101, *et seq.*, controls the disposition of records, but as the D.C. Circuit has treated the RDA as a portion of the FRA, *Public Citizen*, 184 F.3d at 902 (referring to "the RDA portion of the FRA"), defendants do so as well.

2

unlawfully removed and for other redress provided by law," and (in certain situations) notify Congress. 44 U.S.C. § 2905(a). Under 44 U.S.C. § 3106, in turn, each agency head may alert the Archivist of the material mishandling of federal records and seek to initiate an action through the Attorney General to recover records that have been unlawfully removed: "The [agency head] shall notify the Archivist of any actual, impending, or threatened unlawful removal . . . or destruction of records in the custody of the agency. . . [and] shall initiate action through the Attorney General for the recovery of records [the agency head] knows or has reason to believe have been unlawfully removed from that agency[.]" 44 U.S.C. § 3106(a).

## II.  PROCEDURAL BACKGROUND

POGO is a "nonpartisan independent organization" that states that it "champions reforms to achieve a more effective, ethical, and accountable federal government that safeguards constitutional principles." Compl. ¶ 5, ECF 1 at 2. It filed this lawsuit on September 1, 2023, seeking an order requiring NARA to initiate an FRA enforcement action through the Attorney General to recover deleted text messages from IG Cuffari's agency-issued phone. *See* Compl. Prayer for Relief, ECF 1 at 16-17.

### STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, a plaintiff must show that the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Zukerman v. USPS*, 961 F.3d 431, 441 (D.C. Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The "court assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor . . . but it is not required to accept the plaintiff's legal conclusions as correct." *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014).

3

ARGUMENT

I.  **THE FRA'S ENFORCEMENT DUTY APPLIES ONLY WHEN RECORDS HAVE BEEN REMOVED FROM AGENCY CUSTODY**

This case arises under the APA as a challenge to agency inaction. *See* 5 U.S.C. § 706(1); Compl. ¶¶ 54-57, ECF 1 at 16. To prevail on such a claim, a plaintiff must "assert[] that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) ("*SUWA*"). That, in turn, requires the plaintiff to show that the relevant federal statute contains a "specific, unequivocal command" directing the agency to undertake a discrete action. *Id.* at 63. The FRA does impose mandatory duties on agency heads and the Archivist to request enforcement action from the Attorney General in certain circumstances, *see Armstrong*, 924 F.2d at 295, but those duties apply "only to removed records," not to alleged destruction of records. *Citizens for Resp. & Ethics in Washington v. U.S. S.E.C.*, 916 F. Supp. 2d 141, 149 (D.D.C. 2013) ("*CREW I*").

Here, POGO alleges that IG Cuffari "unlawfully deleted text messages that he admitted he sent while conducting agency business in violation of the FRA. NARA regulations, and DHS record retention policies," Compl. ¶ 52, ECF 1 at 15, and that "[t]he deleted records have not been restored, recovered, retrieved, salvaged, or reconstructed," *id.* ¶ 53. POGO alleges that "[t]he failure of NARA and the Archivist to initiate an action through the Attorney General for the recovery of IG Cuffari's destroyed records and for other redress provided by law is 'agency action unlawfully withheld or unreasonably delayed.'" *Id.* ¶ 56, ECF 1 at 16 (quoting 7 U.S.C. § 706(1)).

POGO's argument that the Archivist was required to seek an enforcement action through the Attorney General relies on two statutory provisions. The first, 44 U.S.C. § 2905(a), provides that:

> The Archivist shall notify the head of a Federal agency of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody

4

of the agency that shall come to the Archivist's attention, and *assist the head of the agency in initiating action through the Attorney General for recovery of records unlawfully removed and for other redress provided by law*. In any case in which the head of the agency does not initiate an action for such recovery or other redress within a reasonable period of time after being notified of any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made.

44 U.S.C. § 2905(a) (emphasis added).

The second provision, 44 U.S.C. § 3106, provides in similar language that:

(a) Federal agency notification.—The head of each Federal agency shall notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency, and *with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records the head of the Federal agency knows or has reason to believe have been unlawfully removed from that agency*, or from another Federal agency whose records have been transferred to the legal custody of that Federal agency.

(b) Archivist notification.—In any case in which the head of a Federal agency does not initiate an action for such recovery or other redress within a reasonable period of time after being notified of such unlawful action described in subsection (a), or is participating in, or believed to be participating in any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made.

44 U.S.C. § 3106 (emphasis added).

In each case, the statute creates two distinct duties—a notification duty, and a duty to seek enforcement through the Attorney General—with distinct sets of triggering events. In the event of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records, the agency head and the Archivist each have a duty to notify the other. In the event of any unlawful removal of records—and only in that event—the agency head, with the assistance of the Archivist (or, failing timely action by the agency head, the Archivist alone), must request that the Attorney General initiate an action for the recovery of the records, or another appropriate form of redress for the removal of records.

5

POGO's complaint assumes that the mandatory duty to seek enforcement through the Attorney General also applies in the case of unlawful destruction of records. That interpretation is contrary to the plain text of the statutory provisions, which in each case requires resort to the Attorney General only when records have been "unlawfully removed." 44 U.S.C. §§ 2905, 3106. As a matter of ordinary usage, "removal" of records and "destruction" of records are distinct concepts; if "removal" encompassed "destruction," there would have been no need to separately list "destruction" in the first clause of each provision. Assigning distinct meaning to each term is consistent with the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted).

This reading likewise comports with the interpretive canon of "*expressio unius est exclusio alterius*, that is, the mention of one thing implies the exclusion of another thing." *Halverson v. Slater*, 129 F.3d 180, 185 (D.C. Cir. 1997) (internal quotation marks omitted). Here, Congress distinguished between removal and destruction in the first clause of each provision, but addressed only removal in the second clause, dealing with requests for enforcement actions by the Attorney General. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation marks and alteration omitted).

The distinction between removal and destruction of records is also consistent with usage in another section of the FRA, and with the authoritative interpretation of NARA, the agency charged with administering the FRA. The FRA requires agencies to "establish safeguards against

6

the removal or loss of records," and requires agencies to inform employees of "the penalties provided by law for the unlawful *removal or destruction* of records." 44 U.S.C. § 3105 (emphasis added). NARA's regulations likewise define removal and destruction as distinct concepts:

> Removal means selling, donating, loaning, transferring, stealing, or otherwise allowing a record to leave the custody of a Federal agency without the permission of the Archivist of the United States.
>
> Unlawful or accidental destruction (also called unauthorized destruction) means disposal of an unscheduled or permanent record; disposal prior to the end of the NARA-approved retention period of a temporary record . . .; and disposal of a record subject to a FOIA request, litigation hold, or any other hold requirements to retain the records.

36 C.F.R. § 1230.3(b).

Distinguishing between removal and destruction of records, and requiring recourse to the Attorney General only in the case of removal, also makes good sense. In cases of removal, but not in cases of destruction, involving the Attorney General creates a prospect for recovery that may not otherwise exist: the Attorney General can sue for recovery of federal records, such as through a civil replevin action. The Attorney General has in fact initiated such actions in the past. *See United States v. Red Lake Band of Chippewa Indians*, 827 F.2d 380 (8th Cir. 1987); *cf. also, e.g.*, *United States v. Navarro*, No. 1:22-cv-02292-CKK (D.D.C.) (civil replevin action for recovery of materials under the Presidential Records Act). In the absence of independent litigating authority, other federal agencies cannot take such action acting alone. *See* 28 U.S.C. § 516.

Requiring enforcement action through the Attorney General in cases of destruction of records, in contrast, may "raise some peculiar practical and constitutional difficulties." *CREW I*, 916 F. Supp. 2d at 148. First, in many destruction cases the defendant would likely be a federal agency itself or a senior agency official in their official capacity (as POGO seeks here), and the Department of Justice would, in many cases be responsible for both suing and defending the agency official in question. *See* 28 U.S.C. §§ 516, 519. Aside from the obvious practical concerns

with such an arrangement, such a reading of the FRA would also risk "tension with the constitutional structure." *S.E.C. v. F.L.R.A.*, 568 F.3d 990, 997 (D.C. Cir. 2009) (Kavanaugh, J., concurring). "[J]udicial resolution of intra-Executive disputes is questionable under both Article II and Article III"—Article II, because "legal or policy disputes between two Executive Branch agencies are typically resolved by the President or his designee—without judicial intervention," and Article III because such disputes may not involve sufficient adversity "to constitute a case or controversy." *Id.* For such reasons, "[n]o one plausibly thinks, for example, that a federal court would resolve a dispute between the Department of Justice and, say, the Department of Defense." *Id.*

Because the clear text of the FRA avoids such constitutional questions, the Court need not resolve them. But if the Court were to determine that POGO's reading of the statute is also plausible, the canon of constitutional avoidance would nevertheless favor Defendants' "fairly possible" reading of the text "by which the question may be avoided." *Jennings v. Rodriguez*, 138 S.Ct. 830, 842 (2018) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)).

In short, the text and structure of the FRA, its implementing regulations, and canons of construction all confirm that agency heads and the Archivist have no mandatory duty to seek enforcement action from the Attorney General in cases of destruction of federal records. Nor do the D.C. Circuit's precedents "address[] the specific statutory question at issue here." *CREW I*, 916 F. Supp. 2d at 147; *see also Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 953 (D.C. Cir. 2016) (concerning records removed from agency custody). Defendants acknowledge that two recent district court decisions have reached a contrary conclusion as to NARA's duty to seek enforcement under the FRA. *See Mary Ferrell Foundation, Inc. v. Biden*, No. 3:22-cv-06716-RS, 2023 WL 4551066, at *8 – *9 (N.D. Cal., July 14, 2023); *ACLU Found. of Fl. v. U.S. Immigration &*

*Customs Enforcement*, No. 1:22-cv-01129-CJN, 2023 WL 6461053, at *7 - *8 (D.D.C., Aug. 31, 2023). Neither opinion, however, is persuasive.[3]

In each case the court correctly concluded, following *CREW I*, that an agency head's obligation to seek an enforcement action through the Attorney General under Section 3106(a) extends only to cases of removal, rather than destruction, of records. *Mary Ferrell Foundation*, 2023 WL 4551066, at *9; *ACLU*, 2023 WL 6461053, at *7. But the court in each opinion then attempted to distinguish the agency head's duty under Section 3106(a) from the Archivist's duty under either Section 2905 (in *Mary Ferrell Foundation*) or Section 3106(b) (in *ACLU*). In both cases, the court's reasoning turned on two phrases—"other redress" and "any such unlawful action"—that the court concluded distinguished the agency head's enforcement duty from that of the Archivist. Thus, in *Mary Ferrell Foundation*, the court noted that Section 2905 "requires the Archivist to assist an agency head in "initiating action through the Attorney General for the recovery of records unlawfully removed *and for other redress provided by law*," and provides that "if the agency head fails to initiate an action 'for such recovery or other redress' after being notified of '*such unlawful action*,' the Archivist must request the Attorney General to initiate such action." 2023 WL 4551066, at *9 (emphasis in original). Likewise, the *ACLU* decision noted "two primary textual clues" supporting its conclusion that the Archivist's enforcement duty extends to cases of records destruction as well as removal: first, that Section 3106(b) requires the Archivist to act when the agency head fails to initiate an action "for recovery *or other redress*," and second, that "NARA's referral duties under section 3106(b) are triggered when the agency head does not

---

[3] Following the *Mary Ferrell* decision discussed here, the plaintiffs in that case amended their complaint, *see Mary Ferrell Foundation, Inc. v. Biden,* No. 3:22-cv-06716-RS, ECF 77, and Defendants, including NARA, again moved to dismiss, *see id.* ECF 78. The court in that case has thus not finally determined whether to order NARA to refer any aspect of that case to the Attorney General under the FRA.

9

initiate an action 'after being notified *of any such unlawful action described in subsection (a).*'" 2023 WL 6461053, at *8 (emphasis in original).

Neither distinction makes a difference to *CREW I*'s reasoning, which applies as much to the Archivist as it does to agency heads. The relevant language in both section 3106(b) and section 2905 was added as part of the same enactment as section 3106(a), to describe the same set of duties for the same actors in the same circumstances. This is thus a textbook case of the elementary "principle that individual sections of a single statute should be construed together." *Motion Picture Ass'n of Am., Inc. v. FCC*, 309 F.3d 796, 801 (D.C. Cir. 2002) (quoting *Erlenbaugh v. United States*, 409 U.S. 239, 244 (1972) (internal quotation marks omitted)).

In light of that principle, the textual distinctions that the *Mary Ferrell Foundation* and *ACLU* opinions focused on are insignificant. First, the phrase "other redress," besides recovery of removed records, does not require anything other than removal to trigger the Archivist's enforcement duty. That is because "other redress" beyond or instead of "recovery" is indeed possible in cases of unlawful removal of agency records. Unlawful removal of agency records can, in certain circumstances, constitute a criminal offense, *see* 18 U.S.C. § 641, and criminal prosecution may be appropriate additional redress in a sufficiently serious case. And in certain circumstances, recovery may not be the only or even the most appropriate redress for an instance of unlawful removal of agency records; for example, if an agency employee removes records containing sensitive information (such as, for example, personal identifiable information) that would otherwise be destroyed according to an approved record destruction schedule, ensuring the destruction of the records may be the most appropriate way to redress that unlawful removal.

Likewise, the phrase "such unlawful action" in section 2905 and 3106(b) does not imply that anything beyond removal of records triggers the Archivist's enforcement duty, because the

text of each provision limits the Archivist's duty to the scope of the agency head's duty. Section 2905 directs the Archivist to assist the agency head in "initiating action through the Attorney General for the recovery of records unlawfully removed and for other redress provided by law." 44 U.S.C. § 2905(a). The Archivist's duty to act independently of the agency head kicks in only when "the head of the agency does not initiate an action *for such recovery or other redress* within a reasonable period of time after being notified of any such unlawful action," at which point the Archivist "shall request the Attorney General to initiate such an action." *Id.* The duty to initiate "such an action" can only refer to the action that the agency head is initially obliged to seek through the Attorney General, i.e., an action to recover (or seek other appropriate redress for) unlawfully removed records. *See CREW I*, 916 F. Supp. 2d at 149. The text of the FRA thus expressly limits the Archivist's enforcement duty to the same scope as the agency head's duty.

The same is true of Section 3106(b). The section requires the Archivist to "request the Attorney General to initiate *such an action*" when the relevant agency head "does not initiate an action for recovery or other redress within a reasonable period of time after being notified of any such unlawful action described in subsection (a)." 44 U.S.C. § 3106(b) (emphasis added). Once again, the Archivist's duty is limited to seeking "such an action"—namely, the kind of action that the agency head is obliged to seek. And the agency head is only obliged to seek action through the Attorney General in cases of removal of records, not in cases of destruction. *CREW I*, 916 F. Supp. 2d at 149.

## II. DECLINING TO SEEK ENFORCEMENT ACTION FROM THE ATTORNEY GENERAL WAS NOT ARBITRARY OR CAPRICIOUS

POGO also seeks, in passing, to assert the same underlying claim under 5 U.S.C. § 706(2)(A), which applies to agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Review under that section is available only for "'final

11

agency action.'" *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 882 (1990) (quoting 5 U.S.C. § 704). To be final, an action must "(1) 'mark[] the consummation of the agency's decisionmaking process' and (2) be one by which 'rights or obligations have been determined, or from which legal consequences will flow.'" *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Ag.*, 946 F.3d 615, 520 (D.C. Cir. 2020) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). Even assuming that a failure to act can qualify as final agency action, the inaction POGO complains of here does not qualify. Even a final and conclusive decision not to request an enforcement action through the Attorney General does not determine any rights or obligations or create any legal consequences. With or without such a request, the Attorney General retains the same discretion over enforcement of the FRA. Making or declining to make such a request thus carries "no direct consequences" and serves "more like a tentative recommendation than a final and binding determination." *Franklin v. Mass.*, 505 U.S. 788, 798 (1992) (presentation of decennial census results that remained subject to correction to the President not final agency action); *see also, e.g.*, *Dalton v. Specter*, 511 U.S. 462, 469-71 (1994) (submission of non-binding base-closure recommendations to the President not final agency action). In any case, it is not arbitrary and capricious not to seek an enforcement action from the Attorney General when doing so is not required by statute.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint for failure to state a claim on the merits.

Dated: November 27, 2023                     Respectfully submitted,

                                                        BRIAN M. BOYNTON
                                                        Principal Deputy Assistant Attorney General

                                                        ELIZABETH J. SHAPIRO
                                                        Deputy Director, Federal Programs Branch

*/s/ Cormac A. Early*
CORMAC A. EARLY
D.C. Bar No. 1033835
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 616-7420
cormac.a.early@usdoj.gov

*Counsel for Defendants*