**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| PROJECT ON GOVERNMENT OVERSIGHT, INC. | ) ) ) |
| Plaintiff, | ) ) |
| v. | )        Civil Action No. 23-2564 (DLF) |
| | ) |
| NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, et al., | ) ) ) |
| Defendants. | ) ) ) |

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

<u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

LEGAL BACKGROUND ................................................................................................... 2

FACTUAL BACKGROUND .............................................................................................. 5

ARGUMENT ....................................................................................................................... 12

I.  Because The FRA Imposes On The Archivist Mandatory Enforcement Duties That
    Include The Requirement To Initiate An Enforcement Action Through DOJ For The
    Unlawful Destruction Of Federal Records Plaintiff's Complaint States A Valid Claim
    Under The FRA. ........................................................................................................... 12

      A. The Language Of The FRA Defeats Defendants' Efforts To Limit The Archivist's
         Enforcement Duties. ............................................................................................ 12

      B. Judicial Authority Forecloses Defendants' Efforts To Limit The Archivist's
         Enforcement Duties. ............................................................................................ 15

      C. The Legislative History Of The FRA Defeats Defendant's Unduly Narrow Statutory
         Construction ........................................................................................................ 19

      D.  NARA Guidance Conflicts With Defendants Interpretation Of The FRA .............. 21

II. GIVING THE FRA ITS INTENDED MEANING RAISES NO CONSTITUTIONAL
    CONCERNS ................................................................................................................. 22

III.    THE COMPLAINT STATES A CLAIM UNDER THE ADMINISTRATIVE
        PROCEDURE ACT ................................................................................................. 24

CONCLUSION .................................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**

44 U.S.C. § 3106(a) ................................................................................................ 4, 12, 14, 16

924 F.2d ...................................................................................................................... 18, 24, 25

*ACLU Found. of Fla. v. U.S. Immigration & Customs Enf't*, No. 22-1129 (CJN), 2023 U.S. Dis.

    LEXIS 180507, at *21 (D.D.C. Aug. 31, 2023) ......................................................... 15, 16, 17

*Armstrong v. Bush*, 924 F.2d 282 (D.C. Cir. 1991) .................................................. 3, 17, 18, 24

*Armstrong v. Exec. Office of the President*, 1 F.3d 1274 (D.C. Cir. 1993) ................................. 18

*CREW v. SEC*, 916 F. Supp. 2d 141 (D.D.C. 2013) ............................................................... 18, 19

*Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019) ................................................................. 15

*Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 956 (D.C. Cir. 2016) ............................. 2, 18, 24, 25

*Mary Ferrrell Found., Inc. v. Biden*, No. 22-06176-RS, 2023 U.S. Dist. LEXIS 121633 (N.D.

    Ca. July 14, 2023) ........................................................................................................... 17

*Schuler v. United States*, 617 F.2d 605,608 (D.C. Cir. 1979)) ...................................................... 5

*Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2000) ............................................. 5

**Statutes**

18 U.S.C. § 641 ........................................................................................................................ 5, 15

18 U.S.C. § 2071 ............................................................................................................. 5, 10, 11, 15

28 C.F.R. § 50.15 ......................................................................................................................... 23

36 C.F.R. § 1230.3(b) .................................................................................................................... 5

36 C.F.R. § 1230.12 ................................................................................................................... 5, 15

36 C.F.R. 1230.14 .......................................................................................................................... 4

41 C.F.R. § 102-193.10(a) ............................................................................................................ 2

44 U.S.C. §§ 2101-18 .................................................................................................... 2

44 U.S.C. § 2905(a) ............................................................................................. 4, 12, 14

44 U.S.C. § 2911(a) ...................................................................................................... 3

44 U.S.C. § 3101 ..................................................................................................... 2, 4

44 U.S.C. § 3102 ........................................................................................................... 2

44 U.S.C. § 3103 ........................................................................................................... 2

44 U.S.C. § 3104 ........................................................................................................... 2

44 U.S.C. § 3105 ........................................................................................................... 2

44 U.S.C. § 3106 ........................................................................................................... 2

44 U.S.C. § 3106(b) ....................................................................................... 4, 14, 15, 16

44 U.S.C. § 3107 ........................................................................................................... 2

44 U.S.C. § 3301 ....................................................................................................... 2, 3

44 U.S.C. § 3303 ........................................................................................................... 3

44 U.S.C. § 3303a(a) ..................................................................................................... 3

44 U.S.C. § 3314 ........................................................................................................... 3

Pub. L. 95–452, 92 Stat. 1101 (1978) ......................................................................... 20

Pub. L. No. 113-187, 128 Stat. 2009 (2014) ........................................................ 20, 21

**Other Authorities**

H.R. Conf. Rep. 98-1124 ........................................................................................ 19, 20

NARA Directive 1463, *Unauthorized Destruction or Removal of Records in the Legal or*

*Physical Custody of Federal Agencies*, Dec. 20, 2016 .......................................... 22

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 5

## PRELIMINARY STATEMENT

Compelling evidence points to the destruction of text messages by Department of Homeland Security ("DHS") Inspector General ("IG") Joseph V. Cuffari in response to a Freedom of Information Act ("FOIA") request Plaintiff Project On Government Oversight, Inc. ("POGO") submitted to DHS' Office of Inspector General ("OIG"). Despite knowledge of IG Cuffari's actions DHS OIG failed to implement an internally developed detailed plan of action to determine the extent of the problem and whether DHS should refer the matter to Defendants, the National Archives and Records Administration ("NARA") and the Archivist of the United States. After a whistleblower communicated the aforementioned failure in a protected disclosure, Congress weighed in requesting that NARA, among other things, consult with the Department of Justice ("DOJ") if the evidence confirms IG Cuffari's failure to notify NARA about his unlawful destruction of records. POGO also requested that NARA refer the matter to DOJ pursuant to the mandatory enforcement provisions of the Federal Records Act ("FRA").

Facing mounting evidence of IG Cuffari's likely unlawful actions and numerous requests to refer his destruction of federal records to DOJ Defendants refused to act, ignoring their mandatory statutory duties under the FRA. Instead, they adopted the extraordinary position that the FRA grants NARA and the Archivist no greater enforcement authority than the statute grants to agencies, that their obligations under the FRA do not include enforcement actions through DOJ to recover or otherwise redress destroyed records, and that DOJ in fact has no role to play in responding to records that have been improperly destroyed or deleted. Defendants have now moved to dismiss this action based on a tortured construction of the FRA that contradicts and ignores the statute's plain language, intent, commonsense, and judicial precedent. Defendants' suggestion that a contrary reading of the FRA would create constitutional concerns suffers from

similar flaws, as it rests on a fundamental misunderstanding of this lawsuit and how the FRA's enforcement scheme works.

At bottom, accepting Defendants' construction of the FRA would upend the statute's enforcement scheme, depriving the government of "a key weapon in assuring record preservation and recovery." *Judicia Watch, Inc. v. Kerry*, 844 F.3d 952, 956 (D.C. Cir. 2016). Indeed, the entire FRA enforcement scheme rests on the "assump[tion] that the agency head (or Archivist) will actually refer cases to the Attorney General—as the statute requires[.]" *Id.* That statutory requirement applies "when records go missing," whether by "destruction or removal[.]" *Id.* Defendants' arguments in support of their motion to dismiss run directly contrary to the FRA's mandatory enforcement provisions and their motion must therefore be denied.

## LEGAL BACKGROUND

The FRA, a collection of statutes, governs the creation, management, and disposal of federal or agency records. 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, and 3301-24. Congress enacted the FRA to ensure "[a]ccurate and complete documentation of the policies and transactions of the Federal Government." 41 C.F.R. § 102-193.10(a). Toward that end, the FRA requires federal agencies to establish: (1) a program to make and preserve agency records; (2) effective controls over the creation, maintenance, and use of records; and (3) safeguards against the removal or loss of records. 44 U.S.C. §§ 3101, 3102, and 3105.

The FRA specifically mandates that "[t]he head of each Federal agency shall make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency[.]" 44 U.S.C. § 3101. The FRA defines the term "records" to include:

> all books, papers . . . or other documentary materials, regardless
> of physical form or characteristics . . . made or received by an
> agency of the United States Government under Federal law or in

2

> connection with the transaction of public business and preserved
> or appropriate for preservation by that agency . . . as evidence of
> the organization, functions, policies, decisions, procedures,
> operations or other activities of the Government or because of
> the informational value of data in them.

44 U.S.C. § 3301.

The FRA provides the exclusive procedure by which all federal records may be disposed of or destroyed. *See* 44 U.S.C. § 3314. Under its provisions, federal records may be disposed of or destroyed only with the authorization of the Archivist either through General Records Schedules or NARA-approved agency-specific disposition schedules. *See* 44 U.S.C. §§ 3303, 3303a(a) and (d).

The FRA generally requires that federal records, including those generated in personal electronic messaging accounts, be preserved in a government recordkeeping system. Consistent with this obligation the FRA prohibits agency officials from "create[ing] or send[ing] a record using a non-official electronic messaging account unless such officer or employee—(1) copies an official electronic messaging account of the officer or employee in the original creation or transmission of the records; or (2) forwards a complete copy of the record to an official electronic messaging account of the officer or employee not later than 20 days after the original creation or transmission of the record." 44 U.S.C. § 2911(a).

To prevent the unlawful destruction or removal of records the FRA creates a "system of administrative enforcement." *Armstrong v. Bush*, 924 F.2d 282, 284 (D.C. Cir. 1991) ("*Armstrong I*"). This system imposes mandatory obligations on both agency heads and the Archivist. With respect to agency heads, the FRA mandates that if they become aware of "any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency" they "shall" "notify the Archivist" and "with the assistance of the Archivist . . . initiate action through

the Attorney General for the recovery" of such records. 44 U.S.C. § 3106(a); *see also* 36 C.F.R. 1230.14 (implementing NARA regulation detailing how agencies "must report promptly any unlawful or accidental removal, defacing, alteration, or destruction of records in the custody of that agency to NARA"). With respect to the Archivist, if an agency head fails to take these steps "within a reasonable period of time after being notified of any such unlawful action . . . or is participating in any such unlawful action, the Archivist *shall* request the Attorney General to initiate such an action and shall notify the Congress when such a request has been made." 44 U.S.C. § 3106(b) (emphasis added).

Separately the FRA imposes on the Archivist the obligation to notify an agency head "of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of the agency that shall come to the Archivist's attention[.]" 44 U.S.C. § 2905(a).[1] After providing this notification the Archivist must "assist the head of the agency in initiating action through the Attorney General for the recovery of records unlawfully removed and for other redress provided by law. *Id.* If the agency head fails to initiate such an action "within a reasonable period of time" after being notified of "any such unlawful action" the Archivist "shall request the Attorney General to initiate such an action[.]" *Id.*

Implementing NARA regulations define "[u]nlawful or accidental destruction" as "disposal of an unscheduled or permanent record; disposal prior to the end of the NARA-approved retention period of a temporary record . . . and disposal of a record subject to a

---

[1]     Ignoring this language defendants falsely assert that under this provision the Archivist "may" notify the agency head when federal records are being "mishandled in certain material ways." NARA's Memorandum in Support of Its Motion to Dismiss ("Ds' Mem.") at 2. To the contrary, the cited statutory provision—44 U.S.C. § 2905(a)—uses the word "shall," not "may," and speaks not of the mishandling of federal records but their "actual, impending, or threatened unlawful removal, defacing, alteration, or destruction[.]" *Id.*

FOIA request, litigation hold, or any other hold requirement to retain the records." 36 C.F.R. § 1230.3(b). As NARA's regulations note, "[t]he penalties for the unlawful or accidental removal, defacing alteration, or destruction of Federal records or the attempt to do so, include a fine, imprisonment, or both." *Id.* at § 1230.12 (citing 18 U.S.C. §§ 641, 2071).

## FACTUAL BACKGROUND

On July 5, 2022, POGO filed a FOIA request with the DHS OIG following public reporting in April 2022 that IG Cuffari and top aides, after seeing a draft report prepared by that office that set forth detailed evidence of widespread sexual harassment and misconduct committed by DHS law enforcement personnel, withheld the report from publication for more than a year (and continue to do so today). Complaint ¶ 21.[2] POGO's FOIA request followed a May 10, 2022 letter to IG Cuffari from the Chairs of the House Committee on Oversight and Reform and the House Committee on Homeland Security requesting that he produce "*[a]ll communications* regarding revisions, modifications, and decisions regarding when or whether to issue the DHS OIG report on sexual misconduct and harassment" and "*[a]ll communications* regarding revisions or modifications to the OIG-21-09 report involving DHS OIG personnel." (emphasis added). *Id.* ¶ 23.

When DHS failed to respond in any way to POGO's FOIA request POGO filed a lawsuit against DHS on August 15, 2022, under the Freedom of Information Act. *Id.* ¶ 23. Once in litigation, DHS OIG began producing documents responsive to POGO's request. With respect to that part of POGO'S FOIA request seeking text messages from IG Cuffari and members of his

---

[2]     In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), this Court "must treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citing *Schuler v. United States*, 617 F.2d 605,608 (D.C. Cir. 1979)).

leadership team, DHS provided text messages from only Principal Deputy Inspector General Glenn Sklar, and advised POGO it had no responsive documents from IG Cuffari himself. *Id.*

On June 6, 2023, IG Cuffari testified before the Subcommittee on National Security, the Border, and Foreign Affairs of the House Committee on Oversight and Accountability. Compl. ¶ 25. In response to questioning IG Cuffari admitted that although he sends text messages on his government phone, which he uses "to conduct business," his "normal practice" is to delete them. *Id.* IG Cuffari also admitted that the messages he deleted were "business," not personal, and claimed without explanation that he did not consider them to be federal records. *Id.* According to IG Cuffari, he alone made the decision that none of those messages were federal records. *Id.*

While this was the first public revelation of IG Cuffari's mass deletion of his text messages, OIG staff learned of his actions previously when searching for documents responsive to POGO's July 5, 2022 FOIA request. Compl. ¶ 26. A December 22, 2022 email documents that while searching for records responsive to POGO's FOIA request a records custodian, subsequently identified as IG Cuffari, advised that text messages were deleted in their entirety from his government-issued iPhone and that DHS OIG policy for capturing such messages was not followed. *Id.* The December 22, 2022 email went on to note that a comparison of text messages from other custodians of records responsive to POGO's request indicated the deleted text messages "likely contained federal records." *Id.* ¶ 27. As a result, the email states, if confirmed the deletion of these text messages "may have violated the Federal Records Act and DHS policy for retention of electronic messages." *Id.*

On January 3, 2022, DHS OIG submitted internally a detailed three-page Plan of Action ("Plan of Action") with the stated goal of (1) determining whether the IG's deleted text messages were Federal records, and (2) implementing procedures to ensure the IG's

Federal records were properly preserved. Compl. ¶ 28. The Background section of the Plan notes, among other things, that not only did IG Cuffari admit that DHS OIG policy was not followed for capturing his text messages, but an examination of text messages sent from other records custodians to the IG's OIG iPhone indicated that IG Cuffari's phone "likely contained Federal records." *Id.* ¶ 29. The Plan goes on to state that under applicable regulations, Federal agencies must report promptly to NARA any unlawful or accidental removal, defacing, alteration, or destruction of records in the custody of the agency. *Id.*

To answer the question of whether IG Cuffari unlawfully deleted his text messages the Plan of Action proposed nine steps: (1) identify records review and reporting guidance, develop a review plan, and submit it to the deputy inspector general for the Office of Management ("DIGOM"); (2) DIGOM should then discuss the issue with the counsel to the IG; (3) the OIG RIM was then to obtain statements and evidence; (4) the SRC director and RIM officer were then to work with an attorney from the Office of Counsel ("OC") on legal issues and reporting requirements; (5) the RIM officer was then to determine if the text messages sent to the IG by other records custodians were Federal records and who was responsible for maintaining them; (6) the OIG RIM officer and SRC director were then to discuss the matter with IG Cuffari to confirm he deleted his messages and did not ask others to preserve them; (7) the RIM officer and SRC director were to keep others informed of their progress at least weekly; (8) the OIG RIM officer was then to determine the scope of the loss and address other reporting requirements; and (9) if Federal records were destroyed without proper disposition authority OM was to work with OC to determine if the matter should be reported to NARA. Compl. ¶ 31. There is no indication that the OIG ever implemented the

Plan of Action or that anyone at DHS advised NARA about IG Cuffari's deletion of Federal records. *Id.* ¶ 32.

On June 12, 2023, following IG Cuffari's congressional testimony, the Ranking Members of the House Subcommittee on Cybersecurity, Information Technology, and Government Innovation Workforce and the House Subcommittee on Government Operations and the Federal Workforce sent a letter to the Archivist advising her of IG Cuffari's congressional testimony in which he admitted his normal practice was to delete text messages on an ongoing basis and his confirmation that he was unaware if deleted messages were backed up for recordkeeping purposes. Compl. ¶ 33. The letter further noted that while NARA lists cases of unauthorized records disposal on its website that list did not include any cases of deleted records at the DHS Office of Inspector General. *Id.* ¶ 34. The letter also referenced a previous protected whistleblower complaint made to the NARA Office of Inspector General on March 13, 2023, regarding IG Cuffari's deletion of federal records. *Id.*

The congressional letter concluded with the request that NARA undertake a review to determine what, if any, federal records were destroyed by IG Cuffari and whether any other senior officials at the DHS OIG also destroyed federal records. Compl. ¶ 35. The letter further noted that NARA should also consult with DOJ, as appropriate, if evidence confirms that IG Cuffari or other senior officials failed to notify NARA about their unlawful destruction of federal records, in violation of the law. *Id.*

On June 15, 2023, NARA sent a letter to DHS's chief information officer raising the issue of the potential loss of electronic messages, including text messages and Signal messages, within DHS OIG. Compl. ¶ 36. NARA requested that DHS provide it a report, pursuant to 36 C.F.R. § 1230.16(b), documenting IG Cuffari's practices with respect to the

management of electronic messages, and in particular all messages that meet the definition of a federal record. *Id.* NARA's letter noted that DHS's review should include, but not be limited to, how DHS ensures that text messages that are federal records are properly retained; any training DHS provides to staff members, including senior officials, to ensure that text messages are captured as federal records; and any policies and procedures that are issued on how text messages are identified and preserved if determined to be federal records. *Id.*

By letter dated July 24, 2023, the Ranking Members of the House Committee on Homeland Security and the Subcommittee on Oversight, Investigations, and Accountability forwarded to the Archivist additional evidence concerning IG Cuffari's willful destruction of Federal records and failure to report the destruction to NARA. Compl. ¶ 37. That evidence consisted of the December 22, 2022 email and the Plan of Action. *Id.* The July 24, 2023 congressional letter requested that NARA consult with DOJ if the evidence confirms IG Cuffari's failure to notify NARA about his unlawful destruction of Federal records. *Id.* ¶ 38. By letter dated July 25, 2023, in response to the July 24, 2023 congressional letter, the Archivist advised that she had provided the two documents included with the July 24, 2023 congressional letter to NARA's Chief Records Officer to be considered as part of that office's ongoing review of the matter. *Id.* ¶ 39.

Separately by letter dated June 27, 2023 to the Archivist POGO requested that NARA ask DOJ to initiate an enforcement action to recover text messages that may have been unlawfully deleted by IG Cuffari in violation of the FRA and to investigate the circumstances behind their deletion and the failure of DHS to report the matter to NARA. Compl. ¶ 40. In support POGO relied in part on IG Cuffari's congressional testimony in which he admitted he deleted text messages from his government-issued phone. *Id.*

POGO's letter also noted that IG Cuffari's actions conflict directly with a DHS policy dating back to 2014 that places on all DHS employees the obligation to ensure they preserve any texts on their government phones that may be federal records. *Id.* ¶ 41. POGO explained that two months after staff discovered Cuffari had deleted texts from his phone, the DHS IG's Office of the Chief Information Officer warned all staff in an email, "Do not use SMS/MMS electronic messaging to conduct federal government business/activities." *Id.* The email further states that if such electronic messages are inadvertently created or received they "must be captured." *Id.* Notwithstanding this guidance, IG Cuffari admitted to Congress that he continues to delete text messages on an ongoing basis. *Id.*

POGO's letter also pointed out that IG Cuffari willfully deleted his own texts from his government phone alone is sufficient basis for the Archivist to ask DOJ to examine whether any criminal destruction of federal records occurred under 18 U.S.C. § 2071. Compl. ¶ 42. Moreover, POGO noted, IG Cuffari's unilateral actions differ significantly from other cases where agency records were destroyed due to accidents or systematic weaknesses—situations that do not suggest any intentional criminal effort. *Id.* By contrast, IG Cuffari's records were not deleted as part of a device reset carried out by Information Technology staff, nor were they physical records lost in a flood or fire. *Id.* Further, as POGO's letter to NARA explained, while IG Cuffari has claimed that the text messages he deleted are not federal records, DHS must preserve a substantial range of records, including correspondence, as federal records either permanently or temporarily. *Id.* ¶ 43. That range is especially broad when it comes the records of IG Cuffari. For

example, under DHS records schedules "correspondence signed by the Inspector General" must be permanently retained as federal records. *Id.*

POGO's letter also explained why referral to DOJ is particularly warranted given that IG Cuffari's conduct is part of a larger pattern of delay and obfuscation by the agency's top watchdog, charged with preventing and detecting fraud and abuse in DHS programs and operations. Compl. ¶ 44. Whenever top agency officials appear to have concealed allegedly unlawful actions, the purpose and provisions of the FRA suggest Congress intended there to be an independent investigation. *Id.* Further, as POGO explained, although an Inspector General normally is not considered to be an agency head, an IG is treated as one in numerous respects and has greater independence than the head of a typical agency component. *Id.* ¶ 45. Here, POGO noted, because IG Cuffari participated in the deletion of records while functionally acting as an agency head and failed to report his deletions to NARA in a reasonable amount of time the Archivist should request the assistance of the Attorney General and report that request to Congress. *Id.* POGO's letter also lays out the reasons why NARA's request of June 15, 2023, seeking an accounting from DHS is no substitute for a DOJ inquiry, with the full panoply of investigative resources that the Attorney General possesses. *Id.* ¶ 46. Critically, POGO explained, NARA's request places DHS in the problematic position of investigating its own inspector general, whose independence is protected by the Inspector General Act, while a DOJ inquiry of the DHS IG creates no such a problem. *Id.*

By letter dated August 4, 2023, NARA advised POGO that NARA interpreted the enforcement provisions of the FRA to mean that the Department of Justice generally has no role to play in helping agencies recover records that have been improperly destroyed or deleted.

Compl. ¶ 48. According to NARA, the FRA distinguishes between cases of unauthorized destruction and unauthorized removal of federal records, and only for the latter cases contemplates referral to the Department of Justice. *Id.* NARA indicated that therefore it would instead pursue its own investigative process. *Id.*

## ARGUMENT

I.   **Because The FRA Imposes On The Archivist Mandatory Enforcement Duties That Include The Requirement To Initiate An Enforcement Action Through DOJ For The Unlawful Destruction Of Federal Records Plaintiff's Complaint States A Valid Claim Under The FRA.**

With this lawsuit POGO seeks to give full effect to the FRA's enforcement provisions as applied to IG Cuffari's destruction of federal records responsive to a pending FOIA request. Defendants have now moved to dismiss the lawsuit arguing neither NARA nor the Archivist has any duty to refer this matter to DOJ because the FRA provides no enforcement role for DOJ to play when documents are destroyed. Defendants' motion rests on a demonstrably false construction of the FRA's enforcement provisions that ignores the statute's plain language, legislative history, and NARA's own implementing regulations.

### A. The Language Of The FRA Defeats Defendants' Efforts To Limit The Archivist's Enforcement Duties.

Defendants argue specifically that the FRA imposes on the Archivist the duty to request enforcement action from the Attorney General *only* when records have been removed, but not when they have been destroyed. Ds' Mem. at 4. Defendants purport to derive this interpretation from the language of two provisions of the FRA—44 U.S.C. § 2905(a) and 44 U.S.C. § 3106(a)—that they read in isolation, divorced from the full statutory text.

First, 44 U.S.C. § 2905(a) states in full:

> The Archivist shall establish standards for the selective retention of records of continuing value, and assist Federal agencies in applying

the standards to records in their custody. The Archivist shall notify the head of a Federal agency of any actual,   impending,   or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of the agency that shall come to the Archivist's attention, and assist the head of the agency in initiating action through the Attorney General for the  recovery  of  records unlawfully removed *and for other redress provided by law*. In any case in which the head of the agency does not initiate an action for such recovery *or other redress* within a reasonable period of time after being notified of any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made.

(emphasis added). The corollary provision on which NARA also relies, 44 U.S.C. § 3106, states

in full:

(a) FEDERAL AGENCY NOTIFICATION.
The head of each Federal agency shall notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency, and with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records the head of the Federal agency knows or has reason to believe have been unlawfully removed from that agency, or from another Federal agency whose records have been transferred to the legal custody of that Federal agency.

(b)ARCHIVIST NOTIFICATION.
In any case in which the head of a Federal agency does not initiate an action for such recovery or other redress within a reasonable period of time *after being notified of any such unlawful action described in subsection (a)*, or is participating in, or believed to be participating in any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made.

 (emphasis added).

According to Defendants these provisions establish two distinct duties—a notification

duty and an enforcement duty—triggered by two distinct events. Ds' Mem. at 5. The Archivist's

enforcement duty to initiate action through the Attorney General, Defendants argue, is triggered

solely by "any unlawful removal of records" because the portion of 44 U.S.C. § 2905(a)

describing the Archivist's duty to initiate an action through the Attorney General omits any reference to destroyed records. *Id.* From this Defendants conclude that duty applies to removed records only, not records alleged to have been destroyed. Ds' Mem. at 4, 5.

Unlike Defendants, however, this Court cannot ignore the provisions of the FRA that contradict this interpretation. Section 3106(b) of the FRA specifically mandates that the Archivist request the Attorney General to initiate an enforcement action after being notified of the unlawful actions described in § 3106(a). Section 3106(a), in turn lists the following unlawful actions: "any action, impending, or threatened unlawful removal, defacing, alteration, corruption, *deletion, erasure, or other destruction of records* in the custody of the agency." 44 U.S.C. § 3106(a) (emphasis added). By expressly incorporating document deletion, erasure, and record destruction as among the unlawful actions that trigger the Archivist's mandatory duty to initiate an enforcement action through the Attorney General Congress made clear the Archivist's enforcement duty extends beyond the unlawful removal of federal records to a wide variety of actions that include document destruction.

Section 2905(a) of the FRA provides further support by mandating that when an agency head fails to act the Archivist shall initiate an enforcement action through the Attorney General "for the recovery of records unlawfully removed *and for other redress provided by law*." 44 U.S.C. § 2905(a) (emphasis added). As a catchall term "other redress provided by law" encompasses any available remedy, not simply the recovery of unlawfully removed records. So, for example, as NARA's own regulations recognize, "[t]he penalties for the unlawful or accidental removal, defacing alteration, *or destruction* of Federal records or the attempt to do so, include a fine, imprisonment, or both." *Id.* at § 1230.12 (emphasis added) (citing 18 U.S.C. §§ 641, 2071). Indeed, this is precisely why including document destruction within the unlawful conduct that triggers the Archivist's obligation to refer the matter to the

Attorney General makes sense. Absent that referral, DOJ may have no knowledge of the unlawful destruction of federal records and therefore no ability to seek redress through, for example, applicable criminal statutes. This is also why Defendants are wrong in claiming DOJ has no role to play in these circumstances. *See* Compl. ¶ 48.

Under Defendants' interpretation the words "other redress provided by law" are read out of existence, thereby fundamentally changing and narrowing the scope of the Archivist's mandatory enforcement duties. This contravenes "a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019). This Court must give the FRA its full effect, focusing on all relevant provisions and undertaking a "holistic endeavor . . . by looking not to isolated words, but to text in context, along with purpose and history." *Id.* Here that holistic endeavor leads unmistakably to the conclusion that the Archivist's enforcement duties include the obligation to report instances of unlawful document destruction to the Attorney General.

### B. Judicial Authority Forecloses Defendants' Efforts To Limit The Archivist's Enforcement Duties.

Not only does the statutory language itself contradict Defendants' strained construction, but persuasive judicial authority forecloses their argument. Most recently, in *ACLU Found. of Fla. v. U.S. Immigration & Customs Enf't*, No. 22-1129 (CJN), 2023 U.S. Dis. LEXIS 180507, at *21 (D.D.C. Aug. 31, 2023), the court rejected the very same statutory construction Defendants advance here, concluding "section 3106(b) imposes a referral obligation duty on the Archivist as to all forms of record destruction listed in section 3106(a), not just removal." To reach this conclusion the court relied on "two primary textual clues." *Id.* First the Court considered that section 3106(b) "starts with the premise that the agency did not initiate an action 'for such

recovery *or other redress*,'" while section 3106(a) "only speaks of actions for the 'recovery' of such records." *Id.* at *21-22 (emphasis in original). The court noted that "'recovery' in section 3106(b) appears to correspond with 'removal' . . . while 'other redress' appears to correspond to the other types of prohibited actions listed in section 3106(a)." *Id.* at *22. From this the court reasoned that "[i]nterpreting the enforcement duty of the Archivist to be coextensive with that of the agency" and therefore limited to the recovery of records (as Defendants argue here) "would render the 'or other redress' language surplusage." *Id.*

The court found a second textual clue in the language in section 3106(b) that triggers NARA's referral duties "'after being notified *of any such unlawful action described in subsection (a)*.'" 2023 U.S. Dis. LEXIS at *22 (emphasis in original). The referenced subsection (a), the court noted, "refers to seven kinds of unlawful action . . . not just 'removal.'" *Id.* Accordingly, the court found that "[i]t would be anomalous at best for Congress to have written 'any such unlawful action described in subsection (a)' if it meant just 'removal' (a word that appears several times in the statute)." *Id.*

These two textual clues compel the same conclusion here. Defendants offer no persuasive argument to the contrary, instead propounding the *ipse dixit* proposition that these "textual distinctions . . . are insignificant" because the term "other redress" in the context of record removal can be construed as referring to other remedies such as criminal penalties and the scheduled destruction of sensitive information. Ds' Mem. at 10. Even if true, this provides no support for limiting the term to only instances of record removal.

Defendants also argue that the term "such unlawful action" is similarly limited to record removal because the FRA limits the Archivist's enforcement obligation to that of an agency head. *Id.* at 11. The *ACLU* court properly rejected this claim, noting that section 3106(b) of the

16

FRA imposes on the Archivist "its own (and potentially different) obligations[.]" 2023 U.S. Dist. LEXIS at *19. By contrast, the *ACLU* court concluded that "section 3106(a) imposes no enforcement duty on ICE with respect to deleted records." *Id.*

The court in *Mary Ferrrell Found., Inc. v. Biden*, No. 22-06176-RS, 2023 U.S. Dist. LEXIS 121633 (N.D. Ca. July 14, 2023), reached a similar conclusion based on the differences in language between § 2905(a) and § 3106(a). As that court noted, "§ 3106(a) only requires an agency head to 'initiate action through the Attorney General for the recovery of records the head of the Federal agency knows or has reason to believe have been unlawfully removed.'" *Id.* at *23-24. Section 2905(a), on the other hand, "includes an additional clause enabling the Archivist to initiate action through the Attorney General . . . [that] seems to impose a broader referral duty on the Archivist than § 3106(a) imposes on agency heads because of its inclusion of 'other redress provided by law.'" *Id.* at 24. The "marked" differences between the two statutory provisions, *id.* at *25, compel the same conclusion here, namely that the FRA imposes on the Archivist greater enforcement responsibilities than it imposes on agency heads, and those enforcement responsibilities extend to the unlawful destruction of federal records.

Precedent from the D.C. Circuit lays the foundation for these two cases. In *Armstrong v. Bush* the court analyzed the scope of the administrative enforcement provisions of the FRA in determining whether the statute precluded judicial review of claims that agency officials had violated agency guidelines on compliance with the FRA. The court concluded judicial review of the refusal by either an agency head or the Archivist to trigger the administrative enforcement scheme was necessary "to prevent the *destruction* or removal of records." 924 F.2d at 295 (emphasis added). In reaching this conclusion the court "emphasize[d] the mandatory statutory language because it indicates that the agency head and Archivist are required to take action *to*

*prevent the unlawful destruction* or removal of records[.]" *Id.* at 296 n.12 (emphasis added). The

court based its conclusion on the "clear statutory language" in sections 2095(a) and 3106, which

it described as "mandating that the agency head and Archivist seek redress for the unlawful

removal *or destruction* of records[.]" *Id.* at 296 (emphasis added).

Subsequent precedent from the D.C. Circuit confirms this construction of the FRA's

enforcement provisions. In *Judicial Watch v. Kerry*, the court described *Armstrong I* as involving

"a threatened destruction of records, so we framed the case in those terms," *i.e.*, that the required

action was "'to prevent the unlawful destruction or removal of records[.]'" 844 F.3d at 954

(citing *Armstrong I*, 924 F.2d at 296 n.12). *See also Armstrong v. Exec. Office of the President*, 1

F.3d 1274, 1279 (D.C. Cir. 1993) ("*Armstrong II*") (characterizing 44 U.S.C. § 3106 as

"requiring agency heads to notify the Archivist of any unlawful *destruction* or removal of

records and placing upon them an independent duty to seek legal action through the Attorney

General to recover the records[.]" (emphasis added)).

Defendants offer no cogent basis to depart from this precedent, arguing merely that it

lacks persuasiveness because the courts in *ACLU* and *Mary Ferrrell Foundation* improperly

distinguished between an agency head's duties under the FRA and the duties of the Archivist.

Ds' Mem. at 9. As discussed, however, a plain language reading of the statutory provisions

makes clear that unlike an agency head, the FRA imposes on the Archivist a mandatory duty to

refer the unlawful destruction of records to the Attorney General. That is why the case on which

Defendants principally rely, *CREW v. SEC*, 916 F. Supp. 2d 141 (D.D.C. 2013), carries no

weight here. In *CREW* the court considered the question of whether the FRA imposed on an

agency the obligation to initiate an enforcement action through the Attorney General when

agency records are destroyed. 916 F. Supp. 2d at 145. Whether or not the *CREW* court reached

the correct conclusion as to agency heads, the question of the Archivist's enforcement duties

differs significantly and compels a different conclusion.[3]

### C. The Legislative History Of The FRA Defeats Defendant's Unduly Narrow Statutory Construction.

The legislative history of the FRA also corroborates that the statute requires the Archivist

to refer instances of unlawful document destruction to the Attorney General. Congress amended

the FRA in 1984 to substitute the Archivist for the Administrator of General Services in the

statute's enforcement provisions. The final conference report explains that under the amendment,

"if the agency head does not seek to initiate action within a reasonable time after notification *of

any such unlawful action*, the Archivist shall request the Attorney General to initiate such an

action[.]" H.R. Conf. Rep. 98-1124, at 27 (emphasis added). The phrase "any such unlawful

action" is defined in an earlier paragraph of that report section as "any actual impending or

threatened removal, defacing, alteration, or destruction of records in that agency's custody." *Id.*

The conference report goes on to explain that it added a requirement that the Archivist also

notify Congress when it has requested action by the Attorney General "[b]ecause of the incidents

of removal or destruction of records in recent years[.]" *Id.* at 28.

Of particular significance here, the Conference Report to the 1984 amendments further

notes "the anomalous situation created by current [pre-amended] law whereby an agency head

has a duty to initiate action to recover records which he himself has removed." *Id.* at 28. To

address this anomaly, Congress "authorize[d] the Archivist independently to seek the initiation

of action by the Attorney General for the recovery of such records." *Id.*  Accepting Defendants'

---

[3]      Moreover, the *CREW* case was decided before the 2015 amendments to the FRA that, as
discussed *infra*, reinforce the Archivist's duty to refer to the Attorney General for enforcement a
host of unlawful conduct, including, *inter alia*, document destruction.

argument here that the Archivist has no duty independent of an agency head to refer an instance of document destruction to the Attorney General would also create the very "anomalous situation" Congress sought to avoid with the 1984 amendments. Indeed, the danger is especially acute here where, as an Inspector General, Cuffari has greater independence than the head of a typical agency component. Without the mandated referral by the Archivist DHS is left in the problematic position of investigating its own inspector general, whose independence is protected by the Inspector General Act. Pub. L. 95–452, §1, Oct. 12, 1978, 92 Stat. 1101. A referral by the Archivist to the Attorney General, however, resolves this problem.

Amendments to the FRA enacted in 2014 reinforce the conclusion that the FRA imposes on the Archivist the mandatory obligation to refer instances of unlawful document destruction to the Attorney General. Prior to the amendments section 3106(a) required an agency head to notify the Archivist "of any actual impending, or threatened unlawful removal, defacing alteration, or destruction of records in the custody of the agency, of which he is the head that shall come to his attention[.]" The 2014 Amendments altered this provision by requiring an agency head to notify the Archivist "of any actual impending, or threatened unlawful removal, defacing alteration, *corruption, deletion, erasure*, or *other* destruction of records in the custody of the agency[.]" Pub. L. No. 113-187, 128 Stat. 2009 (2014) (emphasis added). The addition of the language "corruption, deletion, erasure, or other destruction" reflects Congress' commonsense understanding that in 2015 the government now operates in a technological age where digital, not paper records are the norm. Because digital records typically leave a digital footprint their recovery is possible even after "corruption, deletion, erasure, or other destruction." Thus, it is Defendants that are out of step with "good sense" by their suggestion that because there is a prospect for

recovery only when records are removed referral to the Attorney General is warranted only in the case of removal. Ds' Mem. at 7.

The Amendments also modified section 3106(b) of the FRA. The pre-amended provision required the Archivist to request the Attorney General to initiate an enforcement action "in any case in which the head of the agency does not initiate an action for such recovery or other redress . . . after being notified of any such unlawful action[.]" The 2014 Amendments describe the Archivist's referral duty as follows:

> In any case in which the head of a Federal agency does not initiate an action for such recovery or other redress within a reasonable period of time after being notified of any such unlawful action *described in subsection (a)*, *or is participating in, or believed to be participating in any such unlawful action*, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made.

Pub. L. No. 113-187, 128 Stat. 2009 (2014) (emphasis added). As amended section 3106(b) now explicitly references the unlawful actions described in amended section 3106(a) that now include "corruption, deletion, erasure, or other destruction." Amendments to section 3106(b) expand the Archivist's referral duty to include instances where the agency head is participating in any of the unlawful actions under the amended definition in section 3106(a)—the functional case here. This highlights why the FRA imposes on the Archivist a referral obligation not imposed on an agency head. Congress clearly understood that leaving the referral obligation to the agency head created a risk that unlawful conduct would not be addressed when the actor is the agency head.

### D.  NARA Guidance Conflicts With Defendants Interpretation Of The FRA.

Not only do Defendants ignore this legislative history, relying instead on a textual argument that overlooks critical provisions of the FRA and discounts precedent interpreting

21

those provisions, but they ignore NARA's own guidance implementing sections 3106 and

2905 of the FRA. *See* NARA Directive 1463, *Unauthorized Destruction or Removal of*

*Records in the Legal or Physical Custody of Federal Agencies*, Dec. 20, 2016,

https://www.archives.gov/files/foia/directives/nara-1463.pdf. That directive describes the

Archivist's responsibilities under 44 U.S.C. §§ 2905 and 3106 as follows:

> if the head of an agency does not initiate action for recovery or
> other redress for the records within a reasonable time of being
> notified of the unlawful *destruction or removal*, *the Archivist has*
> *the responsibility to request that the Attorney General initiate*
> *action for recovery or other redress*, and to notify Congress
> when such a request has been made.

*Id.* § 1463.4.a (emphasis added). This official interpretation of sections 3106 and 2905 of

the FRA as conferring on the Archivist a duty to refer matters of unlawful destruction or

removal to the Attorney General conflicts irreconcilably with Defendants' litigation position

here.

## II. GIVING THE FRA ITS INTENDED MEANING RAISES NO CONSTITUTIONAL CONCERNS.

To avoid the clear impact of the FRA's enforcement provisions Defendants raise the

specter of constitutional concerns should the statute be given its intended meaning and urge

the Court to apply the "canon of constitutional avoidance[.]" Ds' Mem. at 8. Defendants'

suggestion that because this case requires the Court to resolve an "intra-Executive

dispute[]," *id.*, is gravely mistaken. The dispute here lies not between an agency official—

IG Cuffari—and the Department of Justice, but rather with a textual interpretation of a

statute by NARA and the Archivist. Accordingly, resolving that dispute will not thrust the

Court into a policy dispute between two agencies as Defendants erroneously claim.

Moreover, even if—as the FRA's enforcement provisions require—the Archivist were to refer IG Cuffari's conduct to the Attorney General and the Attorney General were to pursue an action to enforce the FRA's provisions, including through criminal statutes, the dispute still would not raise an "intra-Executive dispute[.]" Ds' Mem. That is because any enforcement action would necessarily be premised on a determination that IG Cuffari had engaged in the unlawful action of destroying federal records, meaning that IG Cuffari would be sued or prosecuted in his individual, non-governmental capacity. DOJ regulations at 28 C.F.R. § 50.15 provide that a federal employee may be represented by DOJ attorneys or have private counsel furnished by DOJ only when that employee is sued in their individual capacity and "the actions for which representation is requested reasonably appear to have been performed within the scope of the employee's employment" and providing that representation is "in the interest of the United States. *Id.* at § 50.15(a). That would not be the case with respect to IG Cuffari. DOJ also denies representation to an employee who "is the subject of a federal criminal investigation concerning the act or acts for which he seeks representation[.]" *Id.* at § 50.15(a)(7). *See also id.* at § 50.15(a)(4) ("[r]epresentation generally is not available in federal criminal proceedings"). Thus, giving the FRA's enforcement provisions their intended meaning raises no legitimate possibility of a conflict of constitutional dimensions.

Ignoring these regulations Defendants cite instead to 28 U.S.C. §§ 516 and 519. Ds' Mem. at 5. Neither provision, however, supports Defendants' constitutional arguments. Section 516 simply charges DOJ with authority to litigate on behalf of the United States, while section 519 places that litigation under the supervision of the Attorney General.

III.     **THE COMPLAINT STATES A CLAIM UNDER THE
         ADMINISTRATIVE PROCEDURE ACT.**

Plaintiff brought its claims under the Administrative Procedure Act ("APA") based on the judicial recognition that the APA authorizes claims by private litigants to compel agency heads and the Archivist to comply with their mandatory obligation to initiate an enforcement action through the Attorney General to redress the unlawful destruction or removal of federal records. *See Judicial Watch*, 844 F.3d at 954; *Armstrong I*, 924 F.2d at 294-96. That obligation flows from 44 U.S.C. § 3106, which deprives the agency head and the Archivist of any "discretion to determine which cases to pursue" and instead "requires [them] to take enforcement action." *Armstrong I*, 924 F.2d at 295. When they fail to "take the required action to prevent the unlawful destruction or removal of records . . . private litigants may sue under the APA to require them to do so." *Judicial Watch*, 844 F.3d 954 (quotation omitted). Here, Defendants refused to take the statutorily required enforcement action and therefore are subject to suit under the APA for their failure to act.

Notwithstanding this precedent Defendants argue the complaint alleges no final action on their part because their refusal to act neither "determine[s] any rights or obligations" nor "create[s] any legal consequences." Ds' Mem. at 12. This is so, they claim, because even had they referred the matter to the Attorney General such referral would not carry any "direct consequence[]" given that the Attorney General retains discretion over whether to enforce the FRA's provisions. Ds' Mem. at 12 (citation omitted). This argument misunderstands the nature of the APA's review provisions.

The action under review here is the failure of the Defendants to initiate an enforcement action as the FRA mandates. Plaintiff has sued the Archivist and NARA, not the Attorney General, and seeks an order compelling them to refer IG Cuffari's document destruction to the Attorney General as the FRA's enforcement scheme requires. The FRA's

24

"recovery provisions" leave the Archivist "'*no* discretion to determine which cases to pursue." *Judicial Watch*, 844 F.3d at 954 (quoting *Armstrong I*, 924 F.2d at 295 (emphasis in original)). Those provisions therefore "fit [the] bill" of a claim permitted by the APA based on an agency's "'fail[ure] to take a discrete agency action that it is required to take.'" 844 F.3d at 954 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). Defendants' failure to act constitutes a final and conclusive decision by them that completely forecloses the possibility of any enforcement action.

To be sure once a referral happens the Attorney General may or may not act. And whether the Attorney General's "action or inaction in response to a referral would be reviewable" is an open question. *Judicial Watch*, 844 F.3d at 957. But it is also a separate question not raised here that has no bearing on the ability of this Court to review under the APA the refusal of NARA and the Archivist to make a referral to the Attorney General.

### **CONCLUSION**

For the foregoing reasons Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

*/s/ Anne L. Weismann*
Anne L. Weismann
(D.C. Bar No. 298190)
5335 Wisconsin Avenue, N.W., Suite 640
Washington, D.C. 20015
Phone: 301-717-6610
Dated: December 19, 2023              Weismann.anne@gmail.com