## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PROJECT ON GOVERNMENT
OVERSIGHT, INC.,

*Plaintiff*,

v.                                                          No. 23-cv-2564 (DLF)

NATIONAL ARCHIVES AND RECORDS
ADMINISTRATION *et al.*,

*Defendants.*

## <u>MEMORANDUM OPINION</u>

The Project on Government Oversight, Inc. ("POGO") filed suit against the National
Archives and Records Administration ("NARA") and Colleen Shogan, the Archivist of the United
States ("the Archivist"), under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et
seq.*, the Federal Records Act ("FRA"), 44 U.S.C. §§ 3301, *et seq.*, and the Declaratory Judgment
Act, 28 U.S.C. §§ 2201, *et seq.*  Compl. ¶ 1, Dkt. 1.  POGO contends that NARA and the Archivist
failed to initiate an action through the Attorney General for the recovery of records destroyed by
Department of Homeland Security ("DHS") Inspector General ("IG") Cuffari.  *Id.* at ¶¶ 55-57.
Before the Court is the defendants' Motion to Dismiss under Rule 12(b)(6) of the Federal Rules
of Civil Procedure.  Defs.' Mot. to Dismiss, Dkt. 11.  For the reasons that follow, the Court will
deny their motion.

## I.       BACKGROUND

In April 2022, the press reported that IG Cuffari and his top aides had stopped the
publication of a report that documented widespread sexual harassment and misconduct at DHS.
Compl. ¶ 21.  Plaintiff POGO, a nonpartisan organization that seeks to promote government

accountability, frequently makes Freedom of Information Act ("FOIA") requests to aid in its investigative work. *Id.* ¶ 5–6. In response to the media reports, POGO filed a FOIA request with DHS's Office of Inspector General ("OIG") in search of communications about sexual harassment at DHS, including text messages. *Id.* ¶ 21. The parties litigated the request, *POGO v. DHS*, No. 22-cv-2424 (D.D.C. 2022), and DHS released several records, though it "advised POGO it had no responsive [texts] from IG Cuffari himself." *Id.* ¶ 24.

Over a year later, on June 6, 2023, IG Cuffari testified before a House subcommittee on the unpublished sexual harassment report and other matters. *Id.* ¶ 25. During his testimony, IG Cuffari revealed that he had a "normal practice" of deleting text messages on his government phone, which he used only to "conduct business." *Id.* He stated that he did not consider his text messages to be federal records. *Id.*

The FRA "governs the creation, management, and disposal" of federal records. *Id.* ¶ 10. (citing *Armstrong v. Bush*, 924 F.2d 282, 284 (D.C. Cir. 1991)). It charges NARA, a government agency led by the Archivist, with responsibilities over those records. *Id.* ¶ 8. Two statutory provisions are relevant to this case. In broad strokes, the first provision requires the Archivist to notify the head of an agency upon learning about certain records mismanagement and assist him in taking action:

(a) The Archivist shall notify the head of a Federal agency of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of the agency that shall come to the Archivist's attention, and assist the head of the agency in initiating action through the Attorney General for the recovery of records unlawfully removed and for other redress provided by law. In any case in which the head of the agency does not initiate an action for such recovery or other redress within a reasonable period of time after being notified of any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made.

(b) The Archivist shall assist the Administrator for the Office of Information and Regulatory Affairs in conducting studies and developing standards relating to record

retention requirements imposed on the public and on State and local governments by Federal agencies.

44 U.S.C. § 2905.  The second provision requires the head of an agency to notify the Archivist upon learning the same and to take action with the Archivist's assistance:

> (a) The head of each Federal agency shall notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency, and with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records the head of the Federal agency knows or has reason to believe have been unlawfully removed from that agency, or from another Federal agency whose records have been transferred to the legal custody of that Federal agency.

> (b) In any case in which the head of a Federal agency does not initiate an action for such recovery or other redress within a reasonable period of time after being notified of any such unlawful action described in subsection (a), or is participating in, or believed to be participating in any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made.

*Id.* § 3106.  The two provisions operate in concert with each other.

IG Cuffari's congressional testimony prompted a cascade of intergovernmental letters. First, the ranking members of two House subcommittees sent a letter dated June 12, 2023, to NARA with notification of IG Cuffari's deletion practice.  *Id.* ¶ 33.  The letter asked NARA to determine which federal records, if any, were destroyed by IG Cuffari or other OIG senior officials and, if NARA discovered that DHS failed to notify NARA about the unlawful destruction of federal records, to consult with the Department of Justice ("DOJ").  *Id.* ¶ 35.  Three days later, on June 15, 2023, NARA sent a letter to DHS that raised the issue and provided recommendations for an internal DHS review.  *Id.* ¶ 36.  Last, on July 24, 2023, the ranking members of another House committee and subcommittee sent NARA their own letter, providing further evidence of IG Cuffari's deletion practice and urging the same action as the previous congressional letter.  *Id.* ¶ 37; *see also* Opp'n at 13, Dkt. 13.

Separately, POGO sent its own letter to NARA on June 27, 2023.  *Id.* ¶ 40.  It requested that NARA ask the DOJ to initiate an enforcement action to recover any text messages and to investigate the circumstances behind any deletion.  *Id.*  On August 4, 2023, NARA told POGO that it "interpreted the enforcement provisions of the FRA to mean that the [DOJ] generally has no role to play in helping agencies recover records . . . improperly destroyed or deleted."  *Id.* ¶ 47.

Meanwhile, DHS had independent knowledge of IG Cuffari's deletion practice.  On or before December 22, 2022, prior to IG Cuffari's congressional testimony, OIG staff members learned that IG Cuffari had deleted at least some text messages while they were searching for records responsive to POGO's aforementioned FOIA request.  *Id.* ¶ 26.  Within weeks, DHS planned a review to determine whether the deleted texts were federal records and to implement procedural safeguards for the preservation of any records.  *Id.* ¶ 28.  DHS crafted a written, nine-step Plan of Action to guide this review.  *Id.* ¶¶ 28–31.  Not only did that Plan state that IG Cuffari's phone "likely contained Federal records," but it also referred to federal regulations for the mismanagement of such records.  *See id.* ¶¶ 28–29.  However, "the Plan of Action was never implemented." *Id.* ¶ 32.

No formal intergovernmental action followed.  "No one at DHS advised NARA about IG Cuffari's deletion of Federal records," *id.*, and the parties do not indicate that DHS contacted the Department of Justice.  And NARA communicated to POGO that it had declined to contact the Department of Justice itself and decided that it "would instead pursue its own investigative process." *Id.* ¶ 47.

On September 1, 2023, POGO filed this action, seeking the Court to declare the Archivist and NARA in violation of the APA, the FRA, and NARA regulations, and to compel them to "request that the [Department of Justice] initiate an action for the recovery of IG Cuffari's

destroyed records and for other redress provided by law." *Id.* ¶ 57.  The defendants moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See* Defs.' Mot. to Dismiss at 1.

## II.   LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rule 12(b)(6) does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; see *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  The complaint need not make "detailed factual allegations," but allegations that are merely a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).  When ruling on a motion to dismiss, "a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Edmonds v. United States*, 436 F.Supp.2d 28, 32–33 (D.D.C. 2006)."

## III.   ANALYSIS

The Court construes the plaintiff's claim for relief as a single APA challenge over the defendants' alleged failure to take discrete action required by the FRA.  "[T]he APA authorizes [a] district court to entertain a properly pleaded claim that the Archivist or an agency head has breached the statutory duty to take [FRA] enforcement action." *Armstrong*, 924 F.2d at 297;

*Norton v. So. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004); 5 U.S.C. §§ 706(1); 706(2)(A).[1]

Accordingly, the issue before the Court is whether the FRA does, in fact, require NARA and the

Archivist to take action by making a referral to the Attorney General over the deletion of text

messages.  As in all matters of statutory interpretation, the Court will "begin with the text of the

statute."  *Am. Fed'n. of Gov't Emps., AFL-CIO, Loc. 3669 v. Shinseki*, 709 F.3d 29, 33 (D.C. Cir.

2013).

At issue are two FRA provisions, § 2905 and § 3106, that impose three complementary

duties on government officials in instances of record mismanagement.  First, both provisions

impose a *notification* duty. The head of a federal agency who becomes aware of "any actual,

impending, or *threatened* unlawful removal, defacing, alteration, or destruction of records in the

custody of the agency" must alert the Archivist, and vice versa.  44 U.S.C. § 3106(a) (emphasis

added); *see also id.* § 2905(a) (using almost identical language).  Second, both provisions impose

a duty to initiate action.  The Archivist must assist the agency head in initiating action "through

the Attorney General for recovery of records unlawfully removed *and for other redress provided

by law*."  *Id.* § 2905(a) (emphasis added).  The italicized text distinguishes § 2905(a) from

§ 3106(a), which requires the agency head with the Archivist's assistance to initiate action

"through the Attorney General for the recovery of records *the [agency] head . . . knows or has*

---

[1] Judicial review of agency action under Section 706(2)(a) is available only over "final agency action." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990).  To be deemed final, an agency action must represent the consummation of the agency's decisionmaking process and be action through which rights or obligations are determined or from which legal consequences flow. *Bennett v. Spear*, 520 U.S. 154 (1997). Here, the plaintiff has alleged that NARA in a letter "advised POGO that NARA interpreted the enforcement provisions of the FRA to mean that the Department of Justice generally has no role to play in helping agencies recover records that have been improperly destroyed or deleted" and would pursue the matter internally instead of referring the issue to the Attorney General. Compl. ¶ 47. This qualifies as a final action under the terms articulated in *Bennett*.

*reason to believe* have been unlawfully removed *from that agency*."  § 3106(a) (emphasis added).

Third, both provisions impose a *referral* duty.  The Archivist must "request the Attorney General

to initiate such an action" when the "[agency] head . . . does not initiate an action for such recovery

or other redress."  *Id.* § 2905(a); *see also id.* § 3106(b).  The statutes differ slightly with respect to

when the Archivist must undertake this duty.  Section 2905(a) requires it "within a reasonable

period of time after [the Archivist is] notified of any such unlawful action," whereas § 3106(b)

requires it "within a reasonable period of time after [the Archivist is] notified of any such unlawful

action described in subsection (a)" or when the agency head "is participating in, or believed to be

participating in any such unlawful action."

The defendants argue that the third duty, the referral duty, does not compel the Archivist

to make a referral over IG Cuffari's deleted texts because the referral duty does not apply to

"destroyed" records, only to removed records, which are those that are are "s[old], donat[ed],

loan[ed], transferr[ed], st[olen], or otherwise allow[ed] . . . to leave the custody of a Federal

agency."  Defs.' Mot. to Dismiss at 1, 7 (citing 36 C.F.R. § 1230.3(b)).  In the defendants' view,

the initiation-of-action-duty language speaks only to "records unlawfully removed," and the

referral duty is triggered upon abdication of the initiation-of-action duty, 44 U.S.C. §§ 2905, 3106.

Thus, the defendants contend, the FRA does not oblige the Archivist to make a referral to the

Attorney General unless federal records have been "unlawfully removed."

The Court disagrees.  Interpreting the statute as a whole, *see Taniguchi v. Kan Pac. Saipan,*

*Ltd.*, 566 U.S. 560, 569 (2012); Antonin Scalia & Bryan A. Garner, READING LAW: THE

INTERPRETATION OF LEGAL TEXTS 167 (2012), a fair reading of the text shows that the multiple

forms of unlawful records mismanagement listed in § 2905(a) ("unlawful removal, defacing,

alteration, or destruction of records") and § 3106(a) ("unlawful removal, defacing, alteration,

corruption, deletion, erasure, or other destruction") implicate the Archivist's notification duty as well as the referral and other duties listed in the statute. For one, § 3106(b) overtly connects the various duties. It provides that the referral duty is triggered by an agency head's failure to "initiate an action for such recovery *or other redress* within a reasonable period of time after [the Archivist is] notified of *any such unlawful action described in subsection (a)*." 44 U.S.C. § 3106(b) (emphasis added). In the latter italicized segment, the Archivist's knowledge of "any" of the aforementioned unlawful acts, including the seven forms of records mismanagement listed in the notification-duty language, activates the chain of events that obligates the Archivist to make a referral. Put another way, the "deletion, erasure, or destruction" of records triggers the Archivist's referral duty in just the same way as their "removal." *Id.* Thus, the subsections of the statute work in tandem.

Moreover, the FRA provisions' language about "other redress" lends further support for this reading. *See* Scalia & Garner, *supra*, at 180. The "other redress" phrase in § 3106(b) contemplates a need for recourse other than removal. "Recovery," which suggests the return or retrieval of records that have retained their integrity, applies naturally to "removed" records. But the option of "other redress" encompasses actions for records that cannot be recovered, such as those that are destroyed.

Similar language in § 2905 supports this interpretation. The initiation-of-action duty in § 2905(a) compels action for the "recovery of unlawfully removed records *and for other redress provided by law*" (emphasis added). In this provision, the difference between "recovery" (for "removed" records) and "other redress" (for records otherwise mismanaged) is even stronger. Congress could have allowed for the "redress provided by law" alone, with no reference to recovery. Instead, Congress designated "recovery" as the recourse for "removed" records and

permitted other options to address other forms of record mismanagement. Arguably, any other interpretation risks rendering the phrase "recovery of unlawfully removed records" superfluous. That said, the Court need not (and does not) declare this the only viable reading of § 2905(a). It is enough to recognize that the text of § 2905 is consistent with the Court's interpretation of § 3106(b), in which the Archivist's referral duty is triggered upon any of the seven forms of record mismanagement listed in § 3106(a).

This Court is not alone in understanding the FRA this way. In a discussion about judicial review, the Circuit stated in dicta that "the FRA expressly provides for judicial review in an action brought by the Attorney General to prevent the *destruction* or removal of records." *Armstrong*, 924 F.2d at 291 (citing 44 U.S.C. §§ 2905(a), 3106) (emphasis added); *see also id.* at 296 (holding that the agency head and Archivist's enforcement actions are subject to judicial review because of the "clear statutory language mandating that [they] seek redress for the unlawful removal or destruction of records"); *Jud. Watch, Inc. v. Kerry*, 844 F.3d 952, 956 (D.C. Cir. 2016) (confirming the interpretation of *Armstrong*). Likewise, in *ACLU of Florida v. ICE*, Judge Nichols determined that "section 3106(b) imposes a referral obligation duty on the Archivist as to all forms of record destruction listed in section 3106(a), not just removal." No. 22-cv-1129 (CJN), 2023 WL 6461053, at *8 (D.D.C. Aug. 31, 2023). *See also Mary Ferrell Foundation, Inc. v. Biden*, No. 22-cv-06176 (RS), 2023 WL 4551066, at *9 (N.D. Cal. July 14, 2023). While the Court recognizes that another decision in this district reached the opposite conclusion, *see Citizens for Responsibility and Ethics in Washington v. DHS*, No. 22-3350 (TSC), 2024 WL 1178472, at *10 (D.D.C. Mar. 19, 2024),

that opinion failed to consider the full context and language of the statute when interpreting § 3106 and 2905.  *Cf. Armstrong*, 924 F.2d at 291.[2]

The defendants' counterarguments are unavailing.  Even though "removal" and "destruction" are distinct concepts, *see* Defs.' Mot. to Dismiss at 5–7, both actions can nonetheless trigger the Archivist's referral duty.  Further, the Court is unpersuaded that intra–executive branch referral to the Attorney General (or the lack thereof) falls outside the scope of judicial review as a constitutional matter.  *Id.* at 8.  Indeed, the D.C. Circuit has already answered this question in the negative, *see Armstrong*, 924 F.2d at 295, and the Court is bound by that precedent.

In sum, the plain language of § 2905 and § 3106 of the FRA is clear: NARA must take action by making a referral to the Attorney General after the Archivist is notified or becomes aware that an agency head has deleted text messages.  Accordingly, the plaintiff has stated a claim under the APA.

## CONCLUSION

For the foregoing reasons, the Court denies defendants' Motion to Dismiss.  A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

September 25, 2024

---

[2] The defendants also point to *Citizens for Responsibility and Ethics in Washington v. SEC*, 916 F. Supp. 2d 141 (D.D.C. 2013).  *See* Mot. to Dismiss at 7.  But that opinion did not address the question at issue here, namely whether § 2905 and § 3106, read together, impose a referral obligation on NARA when it learns of deleted records.