**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PROJECT ON GOVERNMENT OVERSIGHT, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> NATIONAL ARCHIVES AND RECORDS ADMINISTRATION *et al.*, <br><br> *Defendants*. | Case No. 23-cv-2564-DLF |

## JOINT STATUS REPORT

On January 8, 2025, the Court issued the following minute order:

> The Court is in receipt of the parties' November 6, 2024, joint status report. In that status report, Defendants indicated that they needed until December 20, 2024, to conduct a forensic examination that would provide further information and potentially narrow the issues for discovery. The parties shall file another joint status report by January 10, 2025. That report should include an update from Defendants on the examination they conducted and its impact, if any, on discovery in this case. The parties should endeavor to agree on a proposed schedule, which should include deadlines for any initial disclosures, further interim discovery deadlines, and timing for the close of discovery.

On January 10, 2025, the Court granted Defendants' motion for an extension of the deadline to file this status report to January 17, 2025.

Defendants provide the following update to the Court about the examination of Mr. Cuffari's phone: In the parties' prior status report, Defendants reported that DHS's Office of the Inspector General ("DHS OIG") was "in the process of a routine update to its agency issued phones to newer models, and that along with other employee devices subject to this previously scheduled update, IG Cuffari's phone is due to be replaced on or about November 18, 2024."

Defendants can now report that this routine update did not take place as planned and has been delayed indefinitely for DHS OIG leadership.

Defendants can further report that on December 9, 2024, officials from DHS OIG's Office of the Chief Information Officer (OCIO) staff met with Mr. Cuffari to discuss the search of his phone for this case. In the course of that discussion, those officials realized that Mr. Cuffari's current phone had already been forensically searched by OCIO on December 16, 2022, using OCIO's standard procedures for extracting data from iPhones. This search was done in response to POGO's FOIA request dated July 5, 2022. The search determined that there were no text messages, deleted or otherwise, that could be recovered from Mr. Cuffari's phone. A declaration describing this search from Cory Cubbage, the Chief Information Officer for DHS OIG, has been provided to Plaintiff and is attached to this status report. In light of these facts, which Defendants understand were not known to DHS OIG at the time of the status report, DHS OIG chose not to conduct a second forensic search of Mr. Cuffari's phone for text messages.

Despite efforts to discuss, the parties have not reached agreement on a proposed schedule. The parties provide their respective positions as follows:

**Plaintiff's position:**

This Court's September 25, 2024 Memorandum Opinion (Dkt. No. 17) holds unequivocally that "NARA *must* take action by making a referral to the Attorney General after the Archivist is notified or becomes aware that an agency head has deleted text messages." (emphasis added). Mem. Op. at 10. There is no question here that NARA and the Archivist were notified that DHS IG Cuffari had deleted text messages through correspondence from the ranking leaders of five House subcommittees and a full committee (this correspondence is based on IG Cuffari's own congressional testimony, and records from inside DHS OIG), and a letter to

2

NARA from Plaintiff. *Id.* at 3. Yet the Archivist failed to refer the matter to the Attorney General—a fact Defendants do not even attempt to dispute. Thus, having failed to satisfy their nondiscretionary referral duty, Defendants are in violation of the Federal Records Act.

The only possible ground on which Defendants could defend this refusal given the Court's previous ruling would be if IG Cuffari in fact had not deleted text messages. Yet Defendants have taken another path that is as unavailing as their previous position that the FRA does not impose a referral duty on the Archivist for instances of document deletion. Defendants now argue that the deleted text messages cannot be recovered and this alone presents a reason to deny Plaintiff any discovery. Even if true—something Defendants have yet to establish—it would not fully discharge Defendants' obligations under the FRA.

First, Defendants rely on actions taken by DHS's OIG, an entity not before the Court and far removed from the independent assessment the FRA clearly contemplates. Indeed, that office is headed by the very person whose purposeful deletion of his text messages was the subject of OCIO IT staff's investigative and retrieval. Even with this possible, if not likely, conflict of interest NARA apparently has made no effort to independently verify or assess the sufficiency of OCIO IT staff's actions described in the Cubbage Declaration at ¶¶ 15-18. Further, notwithstanding these actions, OIG staff proposed a nine-step Plan of Action the following month on January 3, 2023, clearly signaling their belief that the limited actions OCIO had taken to date were insufficient.

Second, while the Cubbage Declaration spells out the steps OCIO took to recover missing text messages from IG Cuffari's phone, it does not establish that these are the only steps capable of locating the destroyed text messages. Yet without that information the Court cannot

3

reasonably conclude—even if it were both relevant and dispositive, which it is not—that all reasonable efforts have been undertaken to locate the deleted texts.

Third, the FRA does not specify how, when a referral to the Attorney General is made for deleted text messages, those messages must be recovered. Here, for example, at least some of the deleted text messages resided in records from other OIG custodians. Complaint ¶ 27. Yet the Cubbage Declaration makes no mention of looking at other records custodians as possible sources of the deleted texts. Indeed, this highlights precisely why the limited forensic evaluation DHS performed is no substitute for an investigation led by the Department of Justice, with its superior resources, expertise, and ability to compel testimony and the production of documents through subpoenas.

Fourth, as this Court has recognized, the relief authorized by FRA's mandatory referral process extends beyond document recovery to "other redress provided by law." Mem. Op. at 2. Unlike DHS or NARA, the Attorney General may pursue, among other options, criminal sanctions in an appropriate case. But without the mandatory referral the Attorney General is robbed of the ability to even consider any remedies beyond document recovery.

In short, Defendants position ignores the only relevant issue that remains: why have Defendants refused to carry out their mandatory referral obligation. That question can be addressed through limited discovery into: (1) the information available to Defendants when they determined that there was no referral duty in this matter; (2) how that information differs from the information currently in NARA's possession; (3) why Defendants determined there was no referral duty; and (4) whether Defendants took any other actions beyond relying on DHS to conduct a forensic audit. Contrary to Defendants' argument, this discovery bears directly on the remaining issue of why Defendants failed to satisfy their mandatory referral duty.

Plaintiff seeks two months to conduct this limited discovery, which is likely to include at least one deposition of a knowledgeable NARA employee and targeted interrogatories, requests for production of documents, and requests for admissions.

Finally, in opposing this discovery Defendants suggest the statement in the Complaint that NARA "advised POGO that NARA interpreted the enforcement provisions of the FRA to mean that the Department of Justice generally has no role to play in helping agencies recover records that have been improperly destroyed or deleted" in a letter dated August 4, 2023, and that "NARA indicated . . . it would pursue its own investigative process," Compl. ¶ 47, demonstrates why Plaintiff's proposed discovery would not advance its claims. This argument simply makes no sense. This Court rejected Defendants' defense that the Department of Justice has no role to play in the recovery of destroyed records when it held that Defendants are subject to a mandatory referral obligation. Had Defendants at that point made the required referral, discovery would not be necessary, as the case would be moot. Instead, however, Defendants have elected to defend their refusal to make a referral as factually justified leaving Plaintiff entitled to discovery to probe that defense.

**Defendants' position:** As to the question of discovery into Defendants' document recovery efforts, the declaration of Mr. Cubbage, which establishes that DHS OIG already conducted a forensic search of Mr. Cuffari's phone using its standard data extraction methodology when it was conducting a search for records responsive to Plaintiff's FOIA request in December 2022, demonstrates the Government has established the fatal loss of any text messages on Mr. Cuffari's phone that are not otherwise preserved on other government systems. Further searching of Mr. Cuffari's phone would be an exercise in futility since several years have passed since the time period in which records might be stored on Mr. Cuffari's phone but were

not being automatically archived by Verizon (a time frame extending from approximately June 2, 2022 to April 23, 2023). This is in keeping with the Court's decision in *Cause of Action Inst. v. Pompeo*, 319 F. Supp. 3d 230, 236 (D.D.C. 2018), in which the Government established the fatal loss of Secretary of State Colin Powell's missing emails by demonstrating the emails could not be obtained through Secretary Powell himself, his devices, or his service provider.

To the extent Plaintiff and the Court remain concerned that Defendants lack a sufficient basis for concluding that federal records on Mr. Cuffari's phone are not fatally lost, Defendants are willing to pursue further informal inquiries with DHS OIG. That is in keeping with the D.C. Circuit's guidance for FRA referral matters, which explained that, in recognizing the possibility of private litigation to enforce the referral duty, the Court of Appeals "d[id] not mean to imply . . . that the Archivist and the agency head must initially attempt to prevent the unlawful action by seeking the initiation of legal action." *Armstrong v. Bush*, 924 F.2d 282, 292 n.12 (D.C. Cir. 1991). "Instead, the FRA contemplates that the agency head and Archivist may proceed first by invoking the agency's 'safeguards against the removal or loss of records,' 44 U.S.C. § 3105," and by taking other "intra-agency actions." *Id.* Defendants have been working with DHS OIG to take such actions here, and are open to considering further such actions to answer Plaintiff's legitimate questions about what records, if any, can be recovered from Mr. Cuffari's phone.

Discovery into document recovery issues is disproportionate to the needs of the case in light of the results of the forensic search and the possibility of informal inquiries to further recover records. A discovery order of the type issued in *CREW v. DHS*, No. 22-cv-3350 (TSC), and cited by Plaintiff in its notice of supplemental authority, ECF No. 23, is not appropriate here. At the time the order was entered in *CREW*, there was nothing in the record that suggested that any efforts, formal or otherwise, had been taken to repatriate federal records that had been

alienated from the defendant agency on the personal cell phone of the agency's former employee. By contrast, since there is record evidence before the Court in this matter establishing that further efforts to obtain text messages from Mr. Cuffari's phone are unlikely to succeed, the scope of discovery ordered in *CREW* would not be proportional to the needs of this case.

As to Plaintiff's claim that a referral to the Attorney General is needed because of document destruction, Plaintiff's enumerated topics of discovery are not relevant to their claims or proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Plaintiff alleged in this case that NARA "advised POGO that NARA interpreted the enforcement provisions of the FRA to mean that the Department of Justice generally has no role to play in helping agencies recover records that have been improperly destroyed or deleted" in a letter dated August 4, 2023, and that "NARA indicated . . . it would pursue its own investigative process." Compl. ¶ 47. As such, Plaintiff cannot show why discovery into the information available to Defendants when they determined no referral duty existed, how the information differs from that currently in NARA's possession, why Defendants determined there was no referral duty, and what other actions were taken by Defendants other than "relying on DHS to conduct a forensic audit," would advance their claims in this case.

Should the Court still choose to enter a discovery order despite the efforts made in this case, Defendants have no objection to the timelines or limits for conducting discovery set out in the discovery order entered in the *CREW* matter.

| | |
|---|---|
| Dated: January 17, 2024 | Respectfully submitted, |
| /s/ Anne L. Weismann<br>Anne L. Weismann<br>D.C. Bar #298190<br>5335 Wisconsin Avenue, N.W.<br>Suite 640<br>Washington, D.C. 20015<br>(301) 717-6610 | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General<br><br>ELIZABETH J. SHAPIRO<br>Deputy Branch Director<br><br>/s/ Michael J. Gerardi<br>MICHAEL J. GERARDI |

7

| | |
|---|---|
| Weismann.anne@gmail.com<br><br>*Counsel for Plaintiff* | D.C. Bar #1017949<br>Senior Trial Counsel<br>United States Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L Street, NW<br>Washington, DC 20005<br>Phone: (202) 616-0680<br>Email: michael.j.gerardi@usdoj.gov<br><br>*Counsel for Defendant* |